C.J. DOE, et al., Appellants,

v.

**BOYS CLUBS OF GREATER DALLAS, INC., Appellee.**

No. 07–92–0113–CV.

Court of Appeals of Texas, Amarillo.

Jan. 20, 1994.

Rehearing Denied Feb. 14, 1994.

Kip A. Petroff, Dallas, for appellants.

Patterson, Lamberty, Stanford, Walls & Dwyer, John R. Robinson, Donald G. Stanford, Dallas, for appellee.

Before DODSON, BOYD and POFF, JJ.

BOYD, Justice.

Appellants [1] bring this appeal from a take-nothing summary judgment in favor of appellee, Boys Clubs of Greater Dallas, Inc. (the Club). In one point of error, appellants assert the district court erred in granting the summary judgment because genuine issues of material fact existed concerning each of the appellants' causes of action. For reasons hereinafter expressed, the judgment of the trial court is affirmed.

1. C.J. Doe, individually, and as next friend of C.G. Doe, her minor child, T.K. Roe, individually, and as next friend of T.R. Roe and J.K. Roe, his minor children, S.L. Moe and J.L. Moe, indi-vidually, and as next friend of D.L. Moe, their minor child, V.M. Coe and J.M. Coe, individually and as next friend of R.M. Coe and A.C. Coe, their minor grandchildren.

This suit arises out of a series of sexual molestations of the minor plaintiffs over a three year period from 1986 to 1988. These assaults were committed by one of the Club's volunteers, Boyd Ray Mullens (Mullens). In December 1985, Mullens was convicted in Dallas County of the misdemeanor offense of driving while intoxicated. As part of his sentence, he was ordered to complete 60 hours of community service. Mullens was directed by the Dallas County Adult Probation Department to a local volunteer center for assignment to a community service organization. The volunteer center provides referral services for probationers from the Dallas County Probation Department and from the community at large. After being interviewed at the volunteer center on February 25, 1986, Mullens agreed to serve his community service hours at the Mesquite Boys Club. He began working at the Club in March of 1986 and completed his community service hours in September of that same year.

Minor appellants A.C. Coe and R.M. Coe joined the Club in June 1986 and soon became acquainted with Mullens. Mullens met the boys' grandparents on several occasions over the following months and spent time at their home. Later that summer, Mullens, with the permission of the boys' grandparent guardian, V.M. Coe, took A.C. and R.M. Coe on an overnight camping trip. On this trip, Mullens sexually abused A.C. Coe. In the fall of 1986, he began sexually abusing R.M. Coe. Mullens, however, continued to be a regular guest in the Coe home through the summer of 1988, taking the boys on outings, attending the wedding of V.M. Coe's daughter in 1987, and even spending the night on many occasions.

In July 1987, C.G. Doe, a cousin of A.C. and R.M. Coe, joined the Club. That summer, C.G. Doe was also sexually abused by Mullens on a private camping trip. The Club, however, did not sponsor or have any connection with the camping trips involving Mullens and the Coe children.

In the spring and summer of 1988, A.C. and R.M. Coe introduced Mullens to D.L. Moe, J.K. Roe, and T.K. Roe. These minors were never members of the Club. However, the parents of D.L. Moe and the Roe boys contacted the Club to confirm that Mullens had worked there before allowing the children to go on outings with Mullens. The parents also contacted V.M. Coe to ascertain her opinion of Mullens and were told that she had a favorable opinion of him. Thereafter, during the spring and summer of 1988, Mullens sexually abused D.L. Moe, J.K. Roe, and T.K. Roe.

■ Appellants brought suit against the Club and Mullens in June 1990 alleging that the Club was negligent in accepting Mullens as a volunteer without conducting a proper investigation and in failing to disclose to the parents of the boys that Mullens's presence at the Club arose out of community service provisions of his court-imposed sentence for a DWI conviction.[2] They further alleged the Club was negligent for failing to supervise and screen Mullens, for violations under the Texas Deceptive Trade Practices–Consumer Protection Act[3] (DTPA), and for breach of fiduciary duty.[4]

The Club successfully moved for summary judgment on the basis that it owed no duty to appellants, that there was no proximate cause between any negligence on their part and appellants' injuries, that there was no fiduciary relationship, that the statute of limitations barred the claims of some of the parents and adult conservators, and that the DTPA did not apply. In its judgment granting the motion, the trial court severed appellants' claims against Mullens from the claims

2. Mullens's only previous criminal conviction was a 1974 California conviction for the misdemeanor offense of driving while intoxicated.

3. Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 1987).

4. Appellants' petition also contains a theory based on fraud which was not briefed and is therefore waived. *Fort Bend County Drainage D. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex.1991); *Sudderth v. Howard*, 560 S.W.2d 511, 517 (Tex. Civ.App.—Amarillo 1977, writ ref'd n.r.e.).

against the Club. The validity of the judgment in favor of the Club is the only question involved in this appeal.

## STANDARD OF REVIEW

It is now axiomatic that in order for a defendant to be entitled to summary judgment, he must disprove, as a matter of law, at least one of the essential elements of each of the plaintiffs' causes of action, *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991), or it must establish one or more of its defenses as a matter of law, *Bryant v. Gulf Oil Corp.*, 694 S.W.2d 443, 445 (Tex.App.— Amarillo 1985, writ ref'd n.r.e.).

The standards for appellate review of a summary judgment are also axiomatic. The Texas Supreme Court has mandated that:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985). Therefore, the issue on appeal from a summary judgment is whether the movant established its entitlement to summary judgment, as a matter of law, by conclusively proving that no genuine issue of material fact exists as to its cause of action or defense. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983).

■ Again, we note that appellants' sole point of error is that the district court erred in entering summary judgment in favor of the Club because material issues of fact were raised by the summary judgment evidence as to each of appellants' claims against the Club, *i.e.*, negligence, breach of fiduciary duty, and violation of the DTPA. However, where a trial court has entered a summary judgment that does not specify the particular ground on which it is granted, as here, the summary judgment will be affirmed if any of the theories advanced by the movant are meritorious. *Insurance Co. of N. Am. v. Security Ins.*, 790 S.W.2d 407, 410 (Tex. App.—Houston [1st Dist.] 1990, no writ).

## I.  NEGLIGENCE

■ To sustain a cause of action for negligence, it is necessary to show the existence of a duty of one party to another, a breach of that duty, and damages which were proximately caused by the breach of the duty. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987); *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex.1975).

### A.  Duty of the Club

■ Duty is the obligation to conform to a particular standard of conduct toward another, *Castillo v. Sears, Roebuck & Co.*, 663 S.W.2d 60, 64 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.), and is the threshold inquiry in a negligence case, *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex.1993). When no duty exists, no legal liability can arise on account of negligence. *Hanselka v. Lummus Crest, Inc.*, 800 S.W.2d 665, 667 (Tex.App.—Corpus Christi 1990, no writ).

■ In determining whether a defendant owes a duty to a plaintiff, the court will consider several interrelated factors including the risk involved, foreseeability of the risk, and likelihood of injury. These factors are then weighed against the social utility of the actor's conduct and the magnitude of the burden on the defendant. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). Of all these factors, foreseeability of the risk is the "foremost and dominant consideration." *Id.* (citing *El Chico Corp. v. Poole*, 732 S.W.2d at 311). The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d at 525; *Gray v. Baker & Taylor Drilling Co.*, 602 S.W.2d 64,

65 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.).

We are initially presented with the question whether the Club owed a duty to the various appellants to protect them from the conduct of a third party. The general rule is that there is no duty to protect another from the conduct of a third person. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d at 525; *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983); Restatement (Second) of Torts § 315 (1965). However, there are two exceptions to this general rule which are of concern in this case. The first is where there exists a special relationship between the defendant and the injured party or between the defendant and the third person. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d at 525; *Otis Engineering Corp. v. Clark*, 668 S.W.2d at 309. The second exception is when criminal conduct is the foreseeable result of a tortfeasor's negligence. *Nixon v. Mr. Property Management*, 690 S.W.2d at 550. In each of these instances, the defendant has a duty to prevent injuries to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby. *Id.*[5]

Appellants argue that *Nixon v. Mr. Property Management, supra*, is dispositive of the duty question in this case. We disagree. In *Nixon*, the defendants, a property owner and manager, were sued for negligence after a minor was abducted off the street, taken to the defendants' abandoned apartment complex and raped. In reversing the trial court's summary judgment for the defendants, the Texas Supreme Court found that the defendants' duty was established, as a matter of law, by a city ordinance and that the summary judgment evidence showed a breach of that duty. *Nixon v. Mr. Property Management*, 690 S.W.2d at 549. *Nixon* and related cases[6] primarily concern themselves with the liability of owners and occupiers of property for negligence in exercising care for the protection of others. We find these premise liability cases inapplicable to the present facts.

To determine if a special relationship existed, we must examine the association between the Club and Mullens. The Club argues in its motion for summary judgment that, since Mullens was a volunteer and not an employee, no special relationship existed so as to create a duty on the part of the Club to control Mullens's conduct. We disagree. Whether a master-servant relationship exists will not be determined simply by the payment or non-payment of wages.

In *Smith v. University of Texas*, 664 S.W.2d 180 (Tex.App.—Austin 1984, writ ref'd n.r.e.), the court sought to answer the following question: "[W]ould [a] private corporation be liable under the doctrine of *respondeat superior* for the negligence of the appointed, unpaid volunteer in carrying out

---

**5.** The court in *Nixon* cited to the Restatement (Second) of Torts § 448 (1965), which provides:

"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."

**6.** *Exxon Corp. v. Tidwell*, 867 S.W.2d 19 (Tex. 1993); *Delaney v. University of Houston*, 835 S.W.2d 56 (Tex.1992); *East Texas Theatres, Inc.*

*v. Rutledge*, 453 S.W.2d 466 (Tex.1970); *Barefield v. City of Houston*, 846 S.W.2d 399 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Kendrick v. Allright Parking*, 846 S.W.2d 453 (Tex.App.—San Antonio 1992, writ denied); *Haight v. Savoy Apartments*, 814 S.W.2d 849 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Polk v. Rhinestone Wrangler*, 774 S.W.2d 799 (Tex.App.—Texarkana 1989, no writ); *LaFleur v. Astrodome–Astrohall Stadium*, 751 S.W.2d 563 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Ronk v. Parking Concepts of Texas, Inc.*, 711 S.W.2d 409 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.); *Bennett v. Span Industries, Inc.*, 628 S.W.2d 470 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.); *Eastep v. Jack–In–The–Box, Inc.*, 546 S.W.2d 116 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.).

his appointed duties?" *Id.* at 190. In answering that question, the court identified four criteria to be used in determining if a volunteer would have the same status as an employee. The criteria were whether the employer:

1. Has a right to direct the duties of the volunteer;

2. Has an interest in the work to be accomplished;

3. Accepts direct or incidental benefit derived from the volunteer's work; and

4. Has a right to fire or replace the volunteer.

*Id.* at 190.

■ An examination of the summary judgment evidence in this case shows that each of these criteria were met. The fact that Mullens was compelled to perform his service to comply with the restitution provisions of a court order does not change this result. *See* Restatement (Second) of Agency § 224 (1958). Therefore, in determining the liability of the Club, we will treat Mullens as if he were an employee.

■ Under the special relationship exception, there are two theories which may impose a duty on an employer: *respondeat superior* and negligent hiring. *Dieter v. Baker Service Tools,* 739 S.W.2d 405 (Tex. App.—Corpus Christi 1987, writ denied). In the instant case, appellants base their claims on the Club's own negligence rather than the Club's vicarious liability for the torts of its workers under the *respondeat superior* theory. Indeed, Mullens's acts were clearly not within the course and scope of his employment so as to impose liability under *respondeat superior. Id.*

■ A claim for damages based on a theory of negligent hiring, however, does not require that the employee be acting within the course and scope of his employment. *Id.* at 408; Ferdinand S. Tinio, Annotation, *Employer's Knowledge of Employee's Past Criminal Record as Affecting Liability for Employee's Tortious Conduct,* 48 A.L.R.3d 359, 361 (1973). However, the theory does require that a plaintiff's harm be a result of the employment. *Dieter v. Baker Service Tools,* 739 S.W.2d at 408; 48 A.L.R.3d at 361. If the law did not require such a connection, "an employer would essentially be an insurer of the safety of every person who happens to come into contact with his employee simply because of his status as an employee." *Dieter v. Baker Service Tools,* 739 S.W.2d at 408 (quoting *Bates v. Doria,* 150 Ill.App.3d 1025, 104 Ill.Dec. 191, 196, 502 N.E.2d 454, 459 (1986)).

The concerns expressed in *Dieter* are well taken. It would be a harsh rule indeed if an employer were held liable for any criminal act committed by an employee against a person who just happened to be a customer, client, or fellow employee of the employer. The New Mexico Supreme Court has expressed similar concerns when presented with the question of employer liability for off-duty employee conduct. In *F & T Company v. Woods,* 92 N.M. 697, 594 P.2d 745 (1979), the defendant employer was in the business of delivering home appliances. After making a delivery to the plaintiff, the employee who made the delivery returned while off-duty and raped the plaintiff. The Court stated:

To place liability upon the owner of a business for the negligent hiring or negligent retention of its employee under the circumstances existing in this case would go beyond what was ever intended under existing rules and principles of negligence and tort law. To hold defendant liable under the facts in this case would make every employer, including the State and all governmental subdivisions, an insurer of the safety of any person who may at any time have had a customer relationship with that employer.

*Id.* 594 P.2d at 749.

■ Even so, concerns of potential employer liability must be weighed against other societal interests. We recognize that the Club and similar organizations whose primary function is the care and education of

children owe a higher duty to their patrons to exercise care in the selection of their employees than would other employers. *See Doe v. Taylor Independent School Dist.*, 975 F.2d 137 (5th Cir.1992). Further, we recognize that Texas courts have long held that a higher standard of care is owed to children than to adults. *See, e.g., Galveston City R. Co. v. Hewitt*, 67 Tex. 473, 3 S.W. 705, 707 (1887). The Texas Department of Human Services has also recognized this obligation in its regulations governing child care facilities. *See, e.g.*, 40 T.A.C. § 725.1801. Whether the Club is subject to regulation as a child-care facility is unclear from the record before us, however, we find the Department's regulations instructive in establishing the existence of the Club's duty to its members.[7] While we find that the Club was under a duty to exercise reasonable care in the selection of its workers, inasmuch as the decision is not necessary to our disposal of this appeal, we express no opinion as to what degree of inquiry would be required to satisfy this duty.

### B. Breach of Duty

■ In evaluating a grant of summary judgment we must take evidence favorable to the movant as true. *Nixon v. Mr. Property Management*, 690 S.W.2d at 548–49. There is evidence in the record that the Club failed to make any inquiry of Mullens or confirm that the volunteer center had done any investigation before his acceptance at the Club. Having found that the Club owed a duty to its members to exercise reasonable care in the selection of its workers, the failure to make any inquiry was a breach of that duty as a matter of law. Thus, the summary judgment as to appellants who were members of the Club cannot be sustained on this ground.

■ The effect of holding that the Club owed an investigative duty to appellants who were not members of the Club would be to require an employer to insure the safety of

those who come into contact with an employee by reasons other than his employment. That is a requirement we are not prepared to impose. We find the connection between Mullens's acceptance by the Club and the injury to the non-member appellants is too remote and, thus, we decline to extend the investigative duty of the Club to those non-member appellants. We affirm the trial court's grant of summary judgment as to the non-member minor appellants and their guardians.

### C. Proximate Cause

■ The third element of an action for negligence is proximate cause. Therefore, in such an action, it is a part of the plaintiff's burden to establish that the defendant's negligence was the proximate cause of his or her injuries. Proximate cause consists of cause in fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992).

■ "Cause in fact" means that the act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *Id.* That requirement means that the defendant's negligence does more than merely furnish a condition which makes the injury possible. *Bell v. Fore*, 419 S.W.2d 686, 691 (Tex.Civ.App.—Texarkana 1967), *aff'd*, 434 S.W.2d 117 (Tex. 1968).

■ The foreseeability element of proximate cause requires that a person of ordinary intelligence should have anticipated the danger created by his negligent act. *Nixon v. Mr. Property Management*, 690 S.W.2d at 550. The precise injury that occurred need not have been foreseen, only that it "be of such a *general character as might reasonably have been anticipated.*" *Id.* at 551 (quoting *Carey v. Pure Distributing Corp.*, 133 Tex. 31, 124 S.W.2d 847, 849 (1939)).

■ Thus, our holding that the Club owed a duty to its members to exercise rea-

---

7. The Club appears to meet the definition of child-care facility provided in § 42.002(3) of the

Texas Human Resources Code in that it provided supervision for children.

sonable care in the selection of its workers and that it breached that duty by failing to make any inquiry of Mullens does not end our task in determining the propriety of the summary judgment on the negligence cause of action in this appeal. To sustain the summary judgment, the evidence must have been sufficient to establish, as a matter of law, that the Club's negligence was not a proximate cause of the harm alleged by the plaintiffs. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d at 471.

The summary judgment evidence in this case shows that if the Club had asked Mullens about, or otherwise obtained, his criminal record, they would have known that he had two convictions for driving while intoxicated.[8] We do not believe that knowledge of these convictions would have put a reasonable person on notice that Mullens might be a pedophile.[9]

In *Argonne Apartment House Co. v. Garrison*, 42 F.2d 605 (D.C.Cir.1930), the Court said that an employer's knowledge that an employee had been convicted of the offense of intoxication did not put him on notice that the employee might be a thief. *Id.* at 608. Similarly, the Department of Human Services regulations do not provide that all criminal convictions will bar employment at a child care facility. 40 T.A.C. §§ 725.1801 & .2027. Rather, the regulations list certain factors to be considered in determining whether employment is barred such as the nature and seriousness of the crime, the extent and nature of the person's past criminal activity, and other evidence of the person's present fitness. 40 T.A.C. § 725.2027(a).

The type of assaults which occurred here did not in any way relate to or arise out of the conduct for which Mullens was previously

convicted. Therefore, those convictions could not have indicated to the Club that Mullens was a pedophile or had tendencies of that nature and, thus, the Club could not reasonably anticipate assaults such as those involved here. In that connection we note that, in *Nixon*, the Texas Supreme Court found that, although there was no evidence of previous rapes in the area where the defendant's property was located, there was "a litany of prior crimes, including other violent and assaultive crime." *Id.* at 551.

Similarly, had the injuries suffered by appellants here been in some way related to alcohol or Mullens's abuse of alcohol or even his abuse of other substances, it would have been of the same "general character" as the conduct resulting in the convictions and, thus, could have been reasonably anticipated. However, those are not the type of injuries in question here.

We thus conclude that, as a matter of law, the nature of the injury alleged here is not of the same general character that could have been foreseen had the Club known of Mullens's criminal history. Inasmuch as foreseeability (as an element of proximate cause) is a necessary element of appellants' cause of action, in its absence appellants cannot recover on their negligence cause of action. Therefore, the trial court's grant of summary judgment on the negligence cause of action is affirmed.

## II. DTPA CLAIMS

▮▮▮ The threshold inquiry for a cause of action under the Texas Deceptive Trade Practices–Consumer Protection Act [10] (DTPA or the Act) is whether the plaintiffs are "consumers" for purposes of the Act. *Flenniken v. Longview Bank And Trust Co.*, 661

---

8. Mullens's criminal record would have shown the December 1985 conviction and another conviction occurring more than 10 years before.

9. The portions of the affidavits of V.M. Coe and S.L. Moe containing hearsay statements from various neighbors and acquaintances concerning Mullens's character and past conduct are not proper summary judgment evidence in that it would not be admissible in evidence. Tex.

R.Civ.P. 166a(f). The Club properly objected to the hearsay nature of this evidence as required to preserve error. *Barrera v. Sanchez*, 679 S.W.2d 704, 706 (Tex.App.—San Antonio 1984, no writ).

10. Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 1987).

S.W.2d 705, 706 (Tex.1983). The Act defines a consumer as "an individual ... who seeks or acquires by purchase or lease, any goods or services...." Tex.Bus. & Com.Code Ann. § 17.45(4) (Vernon 1987). An additional requirement under the Act is that the goods or services purchased or leased must form the basis of the complaint. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351–52 (Tex.1987); *Hedley Feedlot, Inc. v. Weatherly Trust*, 855 S.W.2d 826, 831 (Tex. App.—Amarillo 1993, no writ). Whether a plaintiff is a consumer under the Act is a question of law. *Hedley Feedlot v. Weatherly Trust*, 855 S.W.2d at 831. That being so, we must examine each of appellants to determine whether they qualify as consumers under the Act. Appellants asserting DTPA claims are: C.J. Doe and her minor child C.G. Doe, and J.M. Coe, his wife V.M. Coe, and their minor grandchildren R.M. Coe and A.C. Coe.

■ There is no evidence in the record that C.J. Doe ever sought or acquired goods or services that formed the basis of her DTPA claim against the Club. C.G. Doe's membership in the Club was arranged through J.M. Coe, his grandfather. The memberships of R.M. Coe and A.C. Coe were handled by V.M. Coe. Consequently, C.J. Doe was not related to the transaction for which she now seeks a remedy as she was neither a party to, or a beneficiary of, the transaction. Therefore, C.J. Doe was not a consumer for purposes of her DTPA claims and the district court's grant of summary judgment as to her was proper.

■ Whether the minor appellants were parties to the Coes' contracts with the Club, however, is irrelevant to their status as consumers. The Texas Supreme Court has described the statute's definition of consumer as being "in terms of a person's relationship to a transaction in goods or services." *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d

535, 540–41 (Tex.1981). Indeed, because of that fact, the Court has instructed us that privity between a plaintiff and a defendant is not a consideration in determining whether the plaintiff is a consumer under the Act. The only requirement is that the goods or services sought or acquired by the consumer form the basis of the complaint. Clearly, the minors were the beneficiaries of the Coes' contracts with the Club and their relationship with the Club is sufficient to establish their consumer status under the Act. *Kennedy v. Sale*, 689 S.W.2d 890, 892 (Tex.1985).

The claims asserted by the remaining DTPA appellants, C.G. Doe, J.M. Coe, V.M. Coe, R.M. Coe and A.C. Coe, are that the Club violated several items on the Act's list of deceptive practices,[11] specifically that: 1) the services of the Club had characteristics they did not have; 2) Mullens had a sponsorship, approval or affiliation he did not have; and 3) the Club failed to disclose material information. In support of these claims, appellants allege the Club made the following assertions: a) that it thoroughly investigated its volunteers; b) it had never observed Mullens do anything wrong; c) Mullens "seemed to be okay;" and d) the Club had no complaints about him.

These appellants, however, offered no summary judgment evidence that the Club had ever seen Mullens act improperly, that he did not "seem to be okay," or that the Club had ever received a complaint about Mullens. Additionally, there is no evidence in the record indicating the Club asserted that Mullens's activities away from the Club had the sponsorship of, or affiliation with, the Club.[12] In fact, the only DTPA claims with support in the record concerned the allegations of misrepresentation and the failure to disclose. The record contains some evidence that the Club told V.M. Coe that it thoroughly investigated its volunteers and that it failed to tell her about Mullens's criminal conviction.

11. Tex.Bus. & Com.Code Ann. § 17.46(b) (Vernon 1987).

12. In the deposition of T.R. Roe, he testifies that Mullens asserted that a trip was being sponsored

by, or affiliated with, the Club. However, there is nothing in the record indicating that the Club made, or was even aware of, such a statement.

For a failure to disclose information to be actionable under the DTPA, however, the information must be: 1) known by the defendant at the time of the transaction; and 2) withheld for the purpose of inducing the consumer into a transaction which the consumer would not have entered had the information been disclosed. Tex.Bus. & Com. Code Ann. § 17.46(b)(23) (Vernon 1987). Here, appellants' claim that the Club's failure to disclose arose out of three separate dealings with the Club. First, when V.M. Coe took R.M. and A.C. Coe to join the Club; second, when V.M Coe inquired about Mullens before the first camping trip; and, third, when J.M. Coe took C.G. Doe to join the Club.

■■■ When V.M. Coe called the Club to inquire about Mullens, it was for the purpose of deciding if she would allow R.M. and A.C. Coe to go camping with Mullens. Although the DTPA does not require that the transaction into which one is induced be with the person failing to disclose, V.M. Coe's decision to allow R.M. and A.C. Coe to go camping was clearly not a transaction under the DTPA. The term "transaction" contemplates an act or acts whereby an alteration of legal rights occur. *Miles v. Starks,* 590 S.W.2d 223, 227 (Tex.Civ.App.—Fort Worth 1979), *cert. denied,* 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980); Black's Law Dictionary 1496 (6th ed. 1990).

■■■ Under the authorities noted above, for the Club to be liable under the DTPA for failure to disclose information, it would have had to know the information about Mullens when the Coes and C.G. Doe joined the club. *Preston Chrysler–Plymouth v. Robinson,* 620 S.W.2d 786, 788 (Tex.Civ.App.—Dallas 1981), *rev'd on other grounds,* 633 S.W.2d 500 (Tex. 1982); *Lochabay v. Southwestern Bell Media,* 828 S.W.2d 167, 172 (Tex.App.—Austin 1992, no writ). In their brief, appellants acknowledge that the Club was not aware of Mullens's past convictions. That acknowledgement is supported by the record. That being true, the lack of knowledge precludes appellants from recovering on failure to disclose grounds.

■■■ Appellants' other allegation is that the Club told them that it thoroughly investigated its volunteers. Appellants posit that such a statement amounted to a representation that the services of the Club had characteristics or qualities which it did not have and, therefore, violated § 17.46(b)(5) of the Texas Business and Commerce Code.[13] Appellants' summary judgment proof shows the existence of material questions of fact on this claim. However, although the DTPA has dispensed with many of the barriers to recovery that exist for common law causes of action, plaintiffs seeking recovery under the DTPA must still show that the defendant's deceptive practice was the producing cause of their damages. Tex.Bus. & Com.Code Ann. § 17.50(a) (Vernon 1987); *Riojas v. Lone Star Gas Co., Etc.,* 637 S.W.2d 956, 959 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.).

■■■ The "producing cause" standard lacks the foreseeability element of proximate cause, leaving only a cause-in-fact analysis. *Hycel, Inc. v. Wittstruck,* 690 S.W.2d 914, 922 (Tex.App.—Waco 1985, writ dism'd); Charles R. Watson, Jr., *Causation in Consumer Litigation, in* STATE BAR OF TEXAS, ADVANCED DTPA–CONSUMER LAW COURSE B–5 (1989). The court's decision in *Riojas v. Lone Star Gas Co., Etc., supra,* is instructive in conducting that analysis. In *Riojas,* the gas company shut off the plaintiffs' gas supply which was used to heat their home. In order to keep warm, the plaintiffs brought charcoal into their house to burn for heat and were injured by carbon monoxide gas produced by the burning charcoal. The trial court granted the gas company's motion for summary judgment on the basis that the gas company's termination of the gas supply had no causal connection with the damages suffered by the plaintiffs by reason of their inhalation of the carbon monoxide. En route to affirming the trial court, the appellate court noted that the act of the plaintiffs in bringing an alternative heat

13. Tex.Bus. & Com.Code Ann. § 17.46(b)(5)   (Vernon 1987).

source (the charcoal) into their house, the burning of which produced the gas, was sufficient to break the causal connection between the gas company's withdrawal of the primary heat source (the gas) and the plaintiffs' injuries. *Id.* at 960.

In the instant case, the deceptive act complained of is a statement made by the Club to the effect that it investigated its volunteers when, in fact, it did not. Subsequent to this statement, but before the camping trip with Mullens and the sexual abuse that occurred thereon, V.M. Coe spoke with Club personnel and asked about Mullens. During this conversation, the Club made no representations concerning any investigation it had made of Mullens prior to his tenure with the Club.[14] Given this intervening inquiry and the circumstances surrounding it, it cannot be said that any earlier statement of the Club concerning their investigative policies was relied upon by Coe in such a manner as to be the producing cause of the injuries suffered by the minors on the camping trip. Therefore, the trial court's summary judgment was also proper as to appellants' DTPA claims.

### III. FIDUCIARY RELATIONSHIP

Appellants also assert that "a substantial duty existed in this case to protect the members of the Boys Club from Mullens" because there existed a general fiduciary relationship between the boys and the Club. This is true, they posit, "because the parents of the paying members trusted and relied upon the Boys Club to provide a wholesome and positive environment for the boys."

■ A fiduciary duty is an extraordinary one that is not lightly created. *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 567 (Tex.App.—Dallas 1989, no writ). Such a relationship exists when a party is under a duty to act for or give advice for the benefit of another within the scope of the relationship. It may also exist when one person has reposed special confidence in another to the

extent that such persons are not dealing with each other on equal terms. This situation arises either as the result of dominance on the part of one, or weakness, dependence or justifiable trust on the part of the other. *Texas Bank and Trust Co. v. Moore*, 595 S.W.2d 502, 508 (Tex.1980); 41 Tex.Jur.3d *Fraud and Deceit* § 6 (1985). The determination of whether a fiduciary relationship exists is not subject to hard and fast rules, rather, it must be determined on a case-by-case basis. Moreover, the mere fact that one subjectively trusts another does not, alone, indicate that he reposed confidence in the other in the sense demanded by fiduciary relations. This is true because something apart from the transaction itself is necessary to show the nature of the relationship of the parties during the transaction. Therefore, in determining the nature of the relationship of the parties, the length of that relationship may be considered as a factor in determining its nature. *Gillum v. Republic Health Corp.*, 778 S.W.2d at 568.

■ In this case, the Club's agreement to provide recreational services and to supervise the minor appellants when they were at the Club's facilities is the basis of the transactional relation between the Club and appellants. The thrust of appellants' argument is that this agreement was sufficient to establish a general fiduciary duty between the Club and appellants from the outset of their relationship. We disagree.

While the agreement to organize recreational activities for the minor appellants and to properly supervise them during those activities arguably created a fiduciary relationship concerning that transaction, it was not sufficient to establish a fiduciary duty to advise appellants about activities not associated with the Club that transpired off of its premises. This is particularly true considering the evidence concerning appellants' continuing personal relationships with Mullens off the Club's premises and prior to the sexual abuse in question. The summary

---

14. As described above, the failure of the Club to tell V.M. Coe about Mullens's criminal history was not actionable absent the Club's knowledge of his prior convictions.

judgment evidence presents no material issues of fact that a fiduciary duty of the nature contended by appellants existed. Therefore, the trial court's grant of summary judgment on appellants' fiduciary duty claims was proper.

Having found that the summary judgment evidence establishes the absence of at least one element necessary to each of appellants' theories of recovery, it becomes our duty to affirm the judgment of the trial court. That decision obviates the necessity of discussing the Club's theory that appellants' claims are barred by limitations.

Accordingly, appellants' point is overruled and the judgment of the trial court affirmed.