Rose HOUSER, Appellant,

v.

David SMITH, d/b/a Accurate Transmission, Appellee.

No. 03–97–00467–CV.

Court of Appeals of Texas, Austin.

April 30, 1998.

Thomas C. Hall, Law Office of Thomas C. Hall, P.C., San Antonio, for appellant.

Julie Caruthers Parsley, Thompson & Knight, P.C., Austin, for appellee.

Before POWERS, KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

The issue presented is whether an employer is liable for damages caused by the criminal conduct of an employee. Appellant Rose Houser sued David Smith d/b/a Accurate Transmission for the criminal acts of Robert Sylvester, an employee of the transmission shop. The jury found in favor of Smith and the trial court rendered judgment that Houser take nothing. We will affirm the judgment of the trial court.

## BACKGROUND

Accurate Transmission, owned by David Smith, allegedly sponsored a barbecue at a tavern near San Marcos owned by Smith's mother. Houser had been a customer of the transmission shop and was invited to the barbecue by Sylvester, an employee of the garage. On the day of the barbecue, Sylvester and Houser drove to the tavern together after leaving Houser's car in the shop's garage in San Antonio. Late that night at the tavern, Houser asked Sylvester to drive her back to San Antonio. Because he was drunk, Sylvester refused and Houser drove them both back to the transmission shop to retrieve her car. Houser claims upon their return Sylvester sexually assaulted her at gunpoint in the garage. At the time of the incident, the shop was closed to business.

Appellant originally sued Robert Sylvester, Accurate Transmission, David Smith, and other defendants for negligence.[1] A default judgment was entered against Sylvester upon his failure to appear in court. In the related criminal case, Sylvester plead guilty to a criminal charge of sexual assault on Rose Houser and was sentenced to ten years' imprisonment. At trial in the present case, the jury charge contained among others two essential questions: (1) at the time of the occurrence in question was Robert Sylvester acting in the scope of his employment, and (2) did the negligence, if any, of certain persons proximately cause the occurrence in question. The jury failed to find Sylvester was acting in the scope of his employment. Although the jury declined to find either Sylvester or Smith negligent, it did find Rose Houser negligent. Houser brings this appeal in four points of error. At oral argument, appellant clarified her appeal by stating she does not challenge the jury's failure to find that Sylvester was acting in the scope of employment at the time of the assault.

---

1. The defendants other than Sylvester and Smith d/b/a Accurate Transmission were non-suited.

## DISCUSSION

■ Houser complains there were at least three evidentiary errors made by the trial court that led to an improper jury verdict[2] and that the jury's failure to find damages was against the great weight and preponderance of the evidence. We need not decide whether the trial court abused its discretion in admitting or disallowing evidence[3] or whether the verdict is against the evidence; we must affirm the trial court's judgment that Houser take nothing on her negligence claim because as a matter of law Smith owed no duty to Houser for the wrongs of his employee under the facts even as alleged by the appellant.

■ To sustain a cause of action for negligence, it is necessary to show the existence of a legal duty of one party to another, a breach of that duty, and damages which were proximately caused by the breach of the duty. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). The threshold inquiry in a negligence case is duty; a plaintiff must prove both the existence and the violation of a duty owed to her by the defendant to establish liability in tort. *See El Chico*, 732 S.W.2d at 311. The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *See Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 312 (Tex.1983). In determining whether the defendant had a duty we consider several factors including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *See id.* at 309. Of all these factors, foreseeability of the risk is the "foremost and dominant consideration."

*Greater Houston Transp. Co.*, 801 S.W.2d at 525.

■ Here, the issue is whether Smith owed a duty to Houser to protect her in some way from Sylvester's conduct. The general rule is that there is no duty to protect another from the conduct of a third person. *See id.; Otis Eng'g Corp.*, 668 S.W.2d at 309; Restatement (Second) of Torts § 315 (1965). An exception exists when there is a special relationship between the defendant and the third person. *See Greater Houston Transp. Co.*, 801 S.W.2d at 525. Under this exception, the theory of negligent hiring and supervision imposes a general duty on an employer to adequately hire, train, and supervise employees. *See Dieter v. Baker Serv. Tools*, 739 S.W.2d 405 (Tex.App.—Corpus Christi 1987, writ denied).[4] While the employee need not be acting in the scope of his employment to impose liability on the employer, the theory of negligent hiring and supervision does require that a plaintiff's harm be the result of the employment. *Id.* at 408. If the law did not require such a connection, "an employer would essentially be an insurer of the safety of every person who happens to come into contact with his employee simply because of his status as an employee." *Id.*

In *Guidry v. National Freight, Inc.*, we have recently addressed the issue of an employer's duty under similar circumstances. 944 S.W.2d 807 (Tex.App.—Austin 1997, no writ). While making a delivery in a National truck, the driver in *Guidry* stopped in Austin to stretch his legs, wandered to an apartment complex, and sexually assaulted a woman. The victim sued the trucking company for the negligent hiring, supervision, and retention of the driver. Guidry argued that National had a duty to check the driver's crimi-

---

2. Appellant complains the trial court erred by (1) admitting in evidence Sylvester's deposition testimony; (2) admitting in evidence her past sexual history; and (3) not admitting in deposition testimony of Smith's mother for purposes of impeachment.

3. We do concede that a finding of negligence on the part of Houser under the facts of this case indicates the jury may have been unfairly prejudiced against Houser or confused on the issues.

4. The other theory creating a duty is respondeat superior. *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405 (Tex.App.—Corpus Christi 1987, writ denied). Under this theory, the third party's acts must be clearly of his employment so as to impose liability. *Id.* Because Houser does not attack the jury's failure to find on this issue we do not address it on appeal.

nal background; such an investigation would have revealed a history of sexually predatory behavior, thereby making foreseeable the risk of his injuring Guidry. We held the employer had no such duty. *Id.* at 811. "Although the trucking company clearly had a duty to the driving public to employ competent drivers, this duty did not require an independent investigation into employees' nonvehicular criminal backgrounds." *Id.* (citing *Connes v. Molalla Transp. Sys., Inc.,* 831 P.2d 1316, 1323 (Colo.1992)). While National could foresee the driver might stop to stretch on a long drive, we found the employer could not be expected to foresee the risk the driver would stop and commit a sexual assault while on-duty. *Id.* Because the type of conduct that occurred and risk of harm were unforeseeable, this Court held National owed no legal duty to the victim of the employee's criminal conduct that was not committed in the course and scope of employment. *Id.* at 812.

In the present case, Houser claims Smith had a duty to investigate Sylvester's criminal background. Such an investigation would have revealed that Sylvester had three forgery convictions.[5] Whether Smith would have fired Sylvester had he discovered Sylvester's forgery convictions is irrelevant. As in *Guidry,* the question presented is whether Sylvester's criminal conduct and the type of harm that befell Houser were foreseeable and presented a risk that Smith was required to guard against by investigating Sylvester's criminal background. Under these facts, we hold the conduct and harm were not foreseeable and therefore Smith did not owe appellant a legal duty beyond the duty to provide a competent transmission mechanic to his customers, including Houser.

We acknowledge certain distinctions from *Guidry;* Houser was a customer and the assault occurred on the business premises. However, we do not think these differences are legally significant when the record indicates that the assault did not occur at the company-sponsored event but later at the shop which under Smith's direction should have been closed to business. At the time of the assault, Sylvester was off-duty and was not by reason of his employment required to be at the shop which was closed. He and Houser returned to the garage only because her car had been left there while they traveled in Sylvester's car to the out-of-town barbecue. Although the driver in *Guidry* was placed in the vicinity of the victim's apartment complex by traveling in a company truck, this Court refused to hold the employer liable for his employee's criminal conduct in the absence of a legal duty to a public that included Guidry. Similarly, we will not hold Smith liable for Sylvester's criminal actions committed on the premises after midnight even though Sylvester had a key to the garage because he was an employee. The type of conduct and harm that occurred were not foreseeable when Smith hired, retained, or supervised Sylvester as an employee of a transmission shop.

The present case is unlike those in which the employee is placed in a situation that foreseeably creates a peculiar risk of harm to others by reason of the employment duties. *E.g., Estate of Arrington v. Fields,* 578 S.W.2d 173 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). In *Arrington,* the employer was liable for negligently hiring someone with a long criminal record for the position of an armed security guard. *Id.* at 184. The foreseeability that some harm might come to a customer is greater when the employee is armed and charged with carrying out a hazardous job that requires skill or experience. *See id.* at 178. In this case, Sylvester's job did not require him to be in close and possibly confrontational situations with customers or to carry a dangerous weapon, nor did it require skill or experience beyond that of a mechanic.

Nor does this case impose on the employer a duty to diligently investigate the employee's background because of potential contact with particularly vulnerable individuals. *E.g., Porter v. Nemir,* 900 S.W.2d 376 (Tex. App.—Austin 1995, no writ); *Doe v. Boys*

---

5. Houser further claims that Smith's mother, Helen Owen, had general knowledge of Sylvester's violent nature and drinking tendencies. Sylvester frequented Owen's tavern and for a time rented a cottage owned by Owen. We decline to impose a duty on an employer to fire or refuse to hire an employee based on allegations by a relative or local rumors.

*Clubs of Greater Dallas, Inc.*, 868 S.W.2d 942 (Tex.App.—Amarillo 1994), *aff'd,* 907 S.W.2d 472 (Tex.1995); *Deerings W. Nursing Ctr. v. Scott,* 787 S.W.2d 494 (Tex.App.—El Paso 1990, writ denied). In *Porter,* this Court held the employer owed a duty to the victim who was sexually assaulted by a drug counselor even though the assault occurred off-premises and after-hours. 900 S.W.2d at 386. We held the employer had a heightened obligation to hire and retain competent counselors because its program treated psychologically fragile clientele who could more easily be manipulated by someone in a position of trust like that of the counselor's. *Id.* Similarly, the court in *Doe* recognized the employer whose function is to care for and educate children owed a higher duty to its patrons to exercise care in the selection of its employees than would other employers. 868 S.W.2d at 951. In that case, the employer clearly had a duty to take reasonable care in hiring, supervising, and retaining its workers; such care might include an investigative search into the prospective employee's background. *Id.* In *Deerings,* the nursing home was sued for negligence in hiring an unlicensed nurse-employee who assaulted an elderly visitor. *Deerings W. Nursing Ctr.,* 787 S.W.2d at 494–95. Looking at the function of a nurse and the nature of the home's elderly clientele who may be "confused, irascible and cantankerous," the court held the employer had a duty to take reasonable care in selecting its medical staff. *Id.* at 496.

In this case, appellant was not the member of a vulnerable or specially protected group, *see Guidry,* 944 S.W.2d at 807; the harm she suffered did not arise from her status as a customer but from an after-hours association with an employee. "It would be a harsh rule indeed if an employer were held liable for any criminal act committed by an employee against a person who just happened to be a customer, client, or fellow employee of the employer." *Doe,* 868 S.W.2d at 950. In addition to the lack of foreseeability with which the conduct and harm occurred, other factors weigh against imposing a duty on Smith. Requiring Smith to perform a background check, for example, checking all criminal and military records and other sources of such data on all current and prospective em-

ployees, would impose a great administrative burden and cost on a small business.

■ Even if Smith had used reasonable care in discovering Sylvester's criminal background in forgery, he could not have foreseen that hiring or retaining Sylvester created an unreasonable risk of harm to Houser as a customer. *See, e.g., Porter,* 900 S.W.2d at 376; *Doe,* 868 S.W.2d at 942; *Arrington,* 578 S.W.2d at 173. "The basis of responsibility under the doctrine of negligent hiring is the master's negligence in hiring or retaining in his employ an incompetent servant whom the master knows or by the exercise of reasonable care should have known was incompetent or unfit and thereby creating an unreasonable risk of harm to others." *Arrington,* 578 S.W.2d at 178.

■ To obtain a reversal of a judgment on an evidentiary ruling, appellant must show that the trial court did commit error and that such error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *New Braunfels Factory Outlet Ctr., Inc. v. IHOP Realty Corp.,* 872 S.W.2d 303, 310 (Tex. App.—Austin 1994, no writ). Even if we were to find that the trial court abused its discretion by allowing or disallowing certain evidence, Houser cannot prevail on her claim of negligence because under these facts Smith owed no duty to Houser as a matter of law. We may uphold a correct lower court judgment on any legal theory supported by the evidence. *See Guaranty County Mut. Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex. 1986). We overrule appellant's first three points of error. In her fourth point of error, Houser claims the jury's failure to find damages was against the great weight and preponderance of the evidence. Because Smith owed no duty to appellant, he is not liable for damages. We overrule Houser's fourth point of error. We affirm the trial-court judgment that Houser take nothing in her negligence claims against Smith.