# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00113-CV

**Lisa Capece, Appellant**

**v.**

**NaviSite, Inc., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. GN001958, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

The issue presented is whether an employer owes a duty of care to a guest of an employee who is sexually assaulted by two executives of the company. Appellant Lisa Capece sued NaviSite, Inc. and two of its executives for injuries she sustained after allegedly being sexually assaulted at a gathering at the home of one of the executives, held the night after a company-sponsored function. The district court granted summary judgment in favor of NaviSite on various issues. After a trial, the jury failed to find that the executives acted as vice principals of the company. Capece appeals from an order granting summary judgment in favor of NaviSite, dismissing her claims of negligent training, supervision, and retention. For the reasons given below, we decline to impose a duty. Accordingly, we affirm the judgment of the district court.

# BACKGROUND

NaviSite is a technology company that provides web-hosting services to other companies. On Saturday, May 13, 2000, it cosponsored the Austin Players= Event, a technology awards banquet. Capece was a friend of Christopher Levy, an employee of NaviSite=s San Diego office, who invited her as his guest to the banquet. At the event, Levy introduced Capece to several other NaviSite employees, including regional sales manager Rene Ibenhard, who was employed in the Austin office, and vice president Howard Brown, who was employed in the company=s San Jose office. Brown was spending the weekend at the home of Ibenhard and his wife, Eileen. Levy came from San Diego to attend the function and coordinate the broadcast of the event on the Internet.

During the event, the Ibenhards invited Levy and Capece to a dinner party at their home the next evening. On the day of the party, Levy arrived first at the Ibenhards= home. P.R.,[1] a new NaviSite employee who was scheduled to begin work the following day, arrived next. P.R. had called Ibenhard that afternoon to ask whether he and Brown had dinner plans. Ibenhard told her she was welcome to join them for dinner at Ibenhard=s home. Capece was the last guest to arrive.

After everyone visited and drank margaritas at the swimming pool, the Ibenhards served dinner, along with various alcoholic beverages, to their guests. After dinner, Capece and Brown went to the garage to play pool. Shortly thereafter, P.R. observed that Capece was having difficulty standing and speaking. Later that evening, Brown returned to the kitchen where the guests had gathered. He called to the others to follow him to the garage, where they found Capece asleep or passed out. Brown later

---

[1] We will refer to certain employees not parties to this lawsuit by their initials to protect their privacy.

acknowledged in his deposition that he and Capece had sex on the front lawn, but claimed it was consensual. Capece asserted that she believed someone placed a date rape drug or foreign substance in her food or drink that made her lose consciousness. Brown carried Capece upstairs and placed her in the bedroom where he had stayed the previous night. Brown, Levy, P.R., and the Ibenhards then got into the Ibenhards= hot tub, in various states of undress.

Later that night, Capece awakened to find Ibenhard on top of her, with his penis inside her. After she extricated herself and made her way down the stairs of the house, she encountered Levy. Capece told Levy that she had been raped by Ibenhard. Levy confronted Ibenhard, who denied raping her. Capece and Levy then left, called the police, and were escorted by a rape counselor to the hospital.

The following day, Levy reported the events of the previous evening to a NaviSite human resources representative who began an investigation. NaviSite suspended both Ibenhard and Brown two days later, on May 17, 2000. Although both men denied the rape allegations, they admitted to being undressed in front of their subordinate female employee, P.R. Based on these admissions, NaviSite terminated Ibenhard and Brown six days later.

Capece originally sued the Ibenhards, Brown, NaviSite, and NaviSite=s parent company, CMGI, Inc., for assault and battery, intentional infliction of emotional distress, invasion of privacy, negligence and gross negligence, and vicarious liability based on theories that the company was liable for conduct committed by Brown and Ibenhard as its vice principals, or in their managerial capacity and within the scope of their employment as agents of the company. Before trial, the district court granted NaviSite=s motions for summary judgment on Capece=s claims of premises liability, agency, general negligence, and

negligent hiring, training, supervision, and retention. Capece then settled with the Ibenhards and Brown. At the trial on the remaining issues, the jury found that Brown and Ibenhard sexually assaulted Capece but that they were not acting in their capacities as vice principals of NaviSite. Based on these findings, the court rendered a take-nothing judgment.

On appeal, Capece challenges only the granting of the no-evidence summary judgment motion in favor of NaviSite on claims of negligent training, supervision, and retention. CMGI, Rene Ibenhard, Eileen Ibenhard, and Howard Brown are not parties to this appeal.

### *The Pleadings*

Capece brought suit against NaviSite alleging, *inter alia*, negligent training, supervision, and retention. She alleged specifically that NaviSite:

- $ failed to implement policies that are effective and provide its employees with guidance regarding reporting sexual harassment;

- $ failed to create and administer policies that would provide NaviSite employees with the tools to report harassment and the confidence that such a report would not result in any adverse employment action or retaliation;

- $ failed to have its own sexual harassment policy, but instead utilized the policy of its parent company;

- $ failed to adequately supervise its employees and officers and to enforce its alcohol and sexual harassment policies; and

- $ failed to train its employees with regard to the sexual harassment policies and acceptable conduct.

4

Because the function at the Ibenhard home followed the Austin Players= event of the previous evening, Capece contends that the Sunday evening social function was sufficiently business-related to impose a duty on NaviSite to protect a nonemployee guest from harm. During the course of the company=s investigation, the human resources representative learned that Brown and Ibenhard were undressed in front of subordinate employee, P.R., and that Ibenhard had allegedly raped another female employee, M.A., who had worked for him in the Austin office. Capece contends that the harm to her was foreseeable because (i) Ibenhard had previously sexually assaulted M.A., who did not notify the company because she feared retaliation from Ibenhard, and (ii) Brown and Ibenhard had engaged in other misconduct.

*Standard of Review*

A party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant=s claims on which it would have the burden of proof at trial. *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.CAustin 2000, no pet.). A no-evidence summary judgment is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant=s claim on which the nonmovant would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Havner*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is Aso weak as to do no more than create a mere surmise or suspicion@ of fact, and the legal effect

5

is that there is no evidence. *Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70 (Tex. App.CAustin 1998, no

pet.). A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we

apply a legal sufficiency standard of review. *Id*.

## ANALYSIS

In a single issue, Capece challenges the district court=s granting of summary judgment in

favor of NaviSite on the issues of negligent training, supervision, and retention. She does not appeal that

portion of the judgment finding that neither Ibenhard nor Brown were acting in the capacity of a vice

principal of NaviSite, that they were not acting in the course and scope of their employment when the

assaults occurred, that NaviSite is not liable under a negligent hiring theory, or that NaviSite did not control

the Ibenhard home under a premises liability theory. The remaining question in this lawsuit is whether as a

matter of law Capece has established that there is a genuine issue of material fact on the elements of a cause

of action for negligent training, supervision, and retention.

A cause of action for negligence consists of three elements: the existence of a legal duty

owed to another, a breach of that duty, and damages proximately resulting from the breach. *Greater*

*Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *El Chico Corp. v. Poole*, 732

S.W.2d 306, 311 (Tex. 1987). Because we have been cited to no court that has imposed a duty on an

employer to a nonemployee third party under these circumstances, we must first inquire whether under

precedent and policy the defendant owed a duty to the plaintiff. *Centeq Realty, Inc. v. Siegler*, 899

S.W.2d 195, 197 (Tex. 1995); *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993). A plaintiff must

prove both the existence and the violation of a duty owed to her by the defendant to establish liability. *El*

*Chico*, 732 S.W.2d at 311. The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Texas Home Mgmt., Inc. v. Peavy*, 46 Tex. Sup. Ct. J. 71, 2002 Tex. LEXIS 177, at *6 (Oct. 31, 2002); *Otis Eng=g Corp. v. Clark*, 668 S.W.2d 307, 312 (Tex. 1983).

In determining whether the defendant had a duty, we consider the risk, foreseeability, and likelihood of injury, weighed against the social utility of the actor=s conduct, the magnitude of the burden of guarding against the injury, the consequences of placing the burden on the defendant, Aand any other relevant competing individual and social interests implicated by the facts of the case.@ *Otis Eng=g Corp.*, 668 S.W.2d at 309; *see also Peavy*, 2002 Tex. LEXIS 177, at *6. In determining the existence of a duty here, we focus primarily on the relationship between the parties and the reasonable foreseeability of harm to the person injured. *Peavy*, 2002 Tex. LEXIS 177, at *6; *Graff*, 858 S.W.2d at 920. We examine first the relationship between the parties.

In the absence of a special relationship between an actor and another that imposes a duty, there is generally no duty upon the actor to control the other=s conduct. *Graff*, 858 S.W.2d at 920; *Greater Houston Transp.*, 801 S.W.2d at 525; *Estate of Catlin v. General Motors Corp.*, 936 S.W.2d 447, 450 (Tex. App.CHouston [14th Dist.] 1996, no writ); *Restatement (Second) of Torts* ' 315 (1965). A special relationship, such as that between an employer and its employees, alters this general rule, creating an exception to the general rule of no duty. Under this exception, the relationship imposes certain duties, including a duty on an employer to adequately train and supervise employees. *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405, 407 (Tex. App.CCorpus Christi 1987, writ denied). The employer-employee relationship, however, may create a duty to a third party only if the third party=s harm is brought about by

7

reason of the employment and is, in some manner, job-related. *Id.* at 408. If the law did not require such a nexus, Aan employer would essentially be an insurer of the safety of every person who happens to come into contact with his employee simply because of his status as an employee.@ *Id*.

It is undisputed that (i) Capece was never a NaviSite employee; (ii) she never had any business relationship with NaviSite; and (iii) NaviSite did not approve or pay for the Sunday night party. Acknowledging that the law requires a connection between the harm and the employment, she asserts that a sufficient nexus exists because she was harmed during an event connected with NaviSite=s employees, sufficient to determine that sexual harassment of one of its employees occurred. Because the company suspended and then terminated Ibenhard and Brown for their misconduct directed at P.R., Capece argues that the event had a business purpose. That the company immediately investigated the incident and took corrective action is not a sufficient ground to impose a duty as to nonemployees. By dint of nothing more than her friendship with one company employee, Capece seeks to extend the company=s duties to her. Although the company=s duties may extend to other employees or certain members of the public, the duty does not extend to individuals such as Capece who bear no relation to the employer=s business or whose injury cannot be directly traced back to the fact of the wrongdoer=s employment.[2]

---

[2] Nor does this case impose on the employer a duty predicated on a special relationship of trust owed to a particularly vulnerable group of individuals. *See, e.g.*, *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287 (Tex. 1996) (Boy Scouts); *Porter v. Nemir*, 900 S.W.2d 376 (Tex. App.CAustin

1995, no writ) (patient in psychological counseling); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 868 S.W.2d 942 (Tex. App.CAmarillo 1994), *aff=d*, 907 S.W.2d 472 (Tex. 1995) (boys); *Deerings W. Nursing Ctr. v. Scott*, 787 S.W.2d 494 (Tex. App.CEl Paso 1990, writ denied) (nursing home residents).

Capece=s reliance on *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 496 (Tex. App.CFort Worth 2002, no pet.) and *Mackey v. U.P. Enterprises, Inc.*, 935 S.W.2d 446, 459 (Tex. App.CTyler 1996, no writ) is misplaced. Both cases involve an employee=s sexual assault or harassment of another employee and therefore possess the requisite job-relatedness. The employer-employee relationship may create a duty to a third party if the third party=s harm is the result of the wrongdoer=s employment, but in the absence of this nexus we decline to impose a duty.

To be sure, an employer may be liable for the off-duty torts of its employees that are committed on the employer=s premises or with the employer=s chattels. *Otis Eng=g*, 668 S.W.2d at 309; *Catlin*, 936 S.W.2d at 450; *see Restatement (Second) of Torts* ' 317. The *Restatement (Second) of Torts* addresses when the employer-employee relationship may impose a duty under those circumstances:

### ' 317. Duty of Master to Control Conduct of Servant

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a)  the servant

  (i)  is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

  (ii)  is using a chattel of the master, and

(b)  the master

  (i)  knows or has reason to know that he has the ability to control his servant,

  (ii)  knows or should know of the necessity and opportunity for exercising such control.

10

*Restatement (Second) of Torts* ' 317. Thus, section 317 speaks to an employer=s duty to control an employee=s physical conduct while acting *outside* the scope of employment, the issue remaining in this case. Section 317 unambiguously limits the scope of the employer=s duty: A duty to prevent an employee from inflicting personal injury on a third person is limited to the employer=s premises or by use or misuse of the employer=s chattels. Neither of these is present here. Nothing in section 317 calls for the extension of the employer=s duty in instances not involving use of the employer=s chattels or beyond the premises of the employer.

Capece makes the same arguments to support her contention that the harm was foreseeable: If harm to P.R. as an employee was foreseeable, Aisn=t it foreseeable that Lisa Capece could get hurt if she is physically present when both men are engaging in sexually harassing conduct?@ She also asserts that the conduct and consequent harm were foreseeable because Brown had engaged in other misconduct, and Ibenhard had raped another employee. We decline to address the facts as they relate to P.R., because she is not a party to this proceeding. It does not necessarily follow, however, that the company=s immediate investigation of the events of May 14 means that any harm was foreseeable as to either P.R. or Capece.

Foreseeability is nevertheless a pivotal issue in assessing whether an employer has a duty in the context of a claim for negligent retention or supervision. In a negligence action, foreseeability may be a component of either duty or proximate cause. *Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654, 659 (Tex. 1999); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Foreseeability

**11**

@requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission.@ *Boys Clubs of Greater Dallas*, 907 S.W.2d at 478. A particular injury is foreseeable if its general character might reasonably be anticipated from the defendant=s negligent conduct. *Id.*; *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 737 (Tex. 1998).

Negligent retention or supervision occurs when the employer knows, or by the exercise of reasonable care should know, that an employee is incompetent, unfit, or otherwise dangerous, and the employer fails to take reasonable measures to prevent injury to others. *Houser v. Smith*, 968 S.W.2d 542, 546 (Tex. App.CAustin 1998, no pet.). Texas courts hold an employer directly liable only when the employer places its employee in a situation that *foreseeably* creates a peculiar risk of harm to others because of the employee=s particular duties. *Compare Houser*, 968 S.W.2d at 546 (employer *not* liable when harm to customer of transmission shop resulted from off-duty contact with mechanic rather than status as customer), *and Guidry v. National Freight, Inc.*, 944 S.W.2d 807, 810-11 (Tex. App.CAustin 1997, no writ) (employer *not* liable when apartment tenant not likely to come into contact with truck driver in the course of his duties), *with Estate of Arrington v. Fields*, 578 S.W.2d 173, 178-79 (Tex. Civ. App.CTyler 1979, writ ref=d n.r.e.) (employer liable for hiring armed security guard with long criminal background). Texas courts have declined to expand the duty to include situations in which the employer either had no knowledge of the employee=s condition or tendencies or did not affirmatively exercise control over the employee. *Catlin*, 936 S.W.2d at 451; *DeLuna v. Guynes Printing Co.*, 884 S.W.2d 206, 209-10 (Tex. App.CEl Paso 1994, writ denied) (citing *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 639 (Tex. App.CSan Antonio 1993, no writ)); *Moore v. Times Herald Printing Co.*, 762 S.W.2d 933,

934 (Tex. App.CDallas 1988, no writ); *Pinkham v. Apple Computer, Inc.*, 699 S.W.2d 387, 390 (Tex. App.CFort Worth 1985, writ ref=d n.r.e.); *see also Graff*, 858 S.W.2d at 920; *Greater Houston Transp.*, 801 S.W.2d at 526-27. An employer who knows of an employee=s lack of fitness or dangerous tendencies may be held liable for injuries as a consequence of negligent retention or negligent supervision. *Guidry*, 944 S.W.2d at 810.

Thus, the question now presented is whether NaviSite was aware or should have been aware of violent or dangerous tendencies of its employees, for which it should have taken precautions to protect others. In both *Houser* and *Guidry*, this Court determined that the type of conduct that occurred in those cases and the risk of harm were unforeseeable, and thus the employer owed no duty to the victim of the employee=s conduct. *Houser*, 968 S.W.2d at 546; *Guidry*, 944 S.W.2d at 812. We find both cases to be instructive.

In *Guidry*, the plaintiff sued National Freight, a trucking company, for negligent hiring, supervision, and retention. Guidry alleged that the truck driver sexually assaulted her during his work break. Guidry alleged that if National had investigated the driver=s prior employment records, it would have discovered a history of sexual misconduct. This Court focused its duty analysis on foreseeability. Reasoning that a trucking company had a duty to employ competent drivers, we declined to create a duty for the non-job-related actions of National=s employees. This Court reasoned that

> [b]efore liability will be imposed, there must be sufficient evidence indicating that the defendant knew or should have known that a foreseeable harm would eventually befall a victim. . . . National could foresee that [the driver] might stop to stretch on his long-haul drive. However, as a truck driver, [he] should never have come into contact with Guidry in the exercise of his duties as an employee of National.

**13**

*Id*. at 811 (citation omitted).  Capece cites *Guidry* as support that a duty exists.  Because Brown and Ibenhard were management employees Awho had the authority to gather employees in a home setting, for social purposes, so they could work together as a team,@ she asserts that it was foreseeable that an employee might bring a date or a spouse to a gathering of employees at a manager=s home.  In addition, Capece argues that any duty the company might have to employee P.R. must flow as well to herself.  Even if we assume that the company owed a duty to P.R., we may not assume that the duty is automatically extended to a nonemployee.

In *Houser,* a car repair company sponsored a barbecue at a tavern in a neighboring town. *Houser*, 968 S.W.2d at 543.  An employee of the company invited Rose Houser, a customer, to attend the barbecue.  *Id.*  On the night of the barbecue, the employee drove Houser to the tavern, leaving Houser=s car in the garage on company premises.  The employee drank too much at the barbecue, and when it was time to leave, Houser drove him back to the company=s garage, where he sexually assaulted her at gunpoint.  *Id.* This Court held that neither the employee=s conduct nor Houser=s harm were foreseeable, and therefore that the company did not owe Houser a duty.  Even if the company had used reasonable care in discovering the employee=s criminal background in forgery, we concluded that the owner of the company could not have foreseen that retaining the employee created an unreasonable risk of harm to Houser as a customer.  Unlike *Guidry*, in which the assault took place against a member of the public and not on business premises, in *Houser*, Athe assault did not occur at the company-sponsored event but later at the shop which . . . should have been closed for business.  At the time of the assault, [the employee] was off-duty and was not by

**14**

reason of his employment required to be at the shop which was closed.@ *Id*. Although *Guidry* and *Houser* both involved claims of negligent hiring and supervision, the foreseeability requirement is the same for a claim of negligent retention.

Here, the alleged assaults did not occur at the Saturday night company function or even later that same night as in *Houser*, but rather the next evening at the home of one of the executives. At the time of the assault, Ibenhard and Brown were off duty and were not, by reason of their employment, required to be at Ibenhard=s house. Capece failed to produce any evidence establishing that the company sanctioned or sponsored the gathering at the Ibenhard home. As to the company=s knowledge of previous conduct sufficient to put it on notice of its employees= lack of fitness or dangerous tendencies, she offered no summary judgment evidence that NaviSite knew before May 14, 2000, that Ibenhard and Brown were sexual assailants. Capece points to evidence that Ibenhard was inadequately trained regarding the company=s sexual harassment policy and that NaviSite learned after the incidentCduring the course of the company=s investigationCthat M.A. had accused Ibenhard of sexual assault. Capece then argues that M.A. was also inadequately trained in the company=s sexual harassment policy and was reluctant to come forward because of fear of retaliation from Ibenhard. But unreported activity is no evidence of foreseeability. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 758-59 (Tex. 1998). And testimony that Ibenhard *would have* been terminated if M.A. *would have* been trained in the company=s sexual harassment policy and *would have* reported him is too attenuated to constitute the requisite scintilla of evidence to survive a no-evidence motion.

Although it may have been foreseeable based on the evidence adduced by Capece that Ibenhard and Brown would engage in other unsavory or ill-advised conduct, she points to no evidence from which we may infer that either would commit the crime of sexual assault. Whether criminal activity is foreseeable in a particular instance requires Amore than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant=s conduct brings about the injury.@ *Boys Clubs of Greater Dallas*, 907 S.W.2d at 478. Because Capece was not a foreseeable victim of any sexual misconduct or crime by these NaviSite employees, and no one had reported, before the events of May 14, 2000, any acts of sexual misconduct by Ibenhard or Brown, it follows from *Guidry* and *Houser* that in the absence of factors not present here, there is no reason Navisite should have foreseen either the conduct or the type of harm that occurred, and we decline to impose a duty.

## CONCLUSION

Capece failed to establish as a matter of law that NaviSite had a duty that extended to her. She further failed to point to competent evidence that NaviSite should have recognized the danger that Ibenhard and Brown presented or that it was foreseeable that a person such as Capece might be exposed to the conduct and consequent harm. We overrule Capece=s single issue and affirm the judgment of the district court.

_____

Jan P. Patterson, Justice

**16**

Before Justices Patterson, Puryear and Powers[*]

Affirmed

Filed:   December 12, 2002

Do Not Publish

[*]   Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov=t Code Ann. ' 74.003(b) (West 1998).