

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TRANSPORTATION CONCEPTS, INC. and ELOY CANALES, | § | No. 08-24-00036-CV |
| | § | |
| Appellants, | § | Appeal from the |
| | § | |
| v. | § | 131st District Court |
| | § | |
| | § | of Bexar County, Texas |
| BRIAN RAMIREZ, | § | |
| Appellee. | § | (TC# 2021CI04603) |
| | § | |

**MEMORANDUM OPINION[1]**

Transportation Concepts, Inc. (TCI), and its employee-driver, Eloy Canales, appeal a trial court's judgment awarding personal injury damages. Appellee Brian Ramirez filed suit against defendants after a collision between him and Canales that involved TCI's 18-wheeler truck. Appellants raise six issues on appeal challenging, among other things, the legal validity of Ramirez's negligent supervision claim against TCI and the sufficiency of the evidence in support of the jury's findings. For the reasons laid out below, we reverse and render judgment in favor of

---

[1] The appeal was transferred to this Court from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Fourth Court of Appeals' precedent to the extent it conflicts with our own. *See* Tex. R. App. P. 41.3

TCI on the theory of direct liability alleged against it. We reverse and remand for new trial on Ramirez's claim against Canales.

## I. BACKGROUND

On February 2, 2021, during a pre-dawn hour in Schertz, Texas, Canales was driving a tractor-trailer truck for TCI. Canales left an Amazon facility, heading towards Interstate 35 (I-35). As he drove on Verde Parkway, he came to a stop at the intersection of Verde Parkway and Schertz Parkway. Canales then executed an unprotected left-hand turn from Verde Parkway to travel east onto Schertz Parkway enroute to I-35. At the same time, Ramirez drove his white sedan west on Schertz Parkway on his way to work as a driver's assistant. Before Canales completed the turn and while the trailer of his truck blocked the west lane of Verde Parkway traffic, Ramirez's vehicle collided with the tandem axles near the rear of the trailer. Ramirez sustained injuries from the collision.

Ramirez filed suit against Canales and TCI, alleging claims of negligence, negligent training, negligent supervision, and gross negligence. The case proceeded to a jury trial where multiple witnesses testified and numerous exhibits were admitted into evidence.

In support of negligent supervision, Ramirez contended that TCI chose an unsafe route for Canales to travel in its tractor-trailer truck as he departed from the Amazon facility. He points to testimony of TCI's operations manager, Jimmy Wren, who acknowledged he advised Canales to drive on Verde Parkway, not Mid Cities Parkway. Wren chose the route during the daytime and without viewing the area during darker hours. Ramirez's expert, Roger Allen, testified that Mid Cities Parkway provided the safest route as a driver had a "straight shot" to the interstate and only needed to make a right turn. Allen described that he had reviewed TCI's "Professional Truck Driver Training Program" (the Program), which advised against making unprotected left-hand

2

turns. Ramirez presented evidence establishing that TCI's employees had not seen or heard of the Program.

TCI countered with evidence of Canales's qualifications and experience as a commercial truck driver. Although TCI acknowledged it had selected Canales's route on the occasion in question, it nonetheless asserted its drivers were allowed to make route changes as needed or desired. TCI stipulated that Canales was acting within the course and scope of his employment at the time of the collision.

Following Ramirez's case in chief, Canales and TCI moved for a directed verdict on negligence per se against Canales, and on negligent supervision and negligent training against TCI. The trial court denied these motions. At the close of evidence and before the charge was submitted to the jury, Ramirez voluntarily dismissed his gross negligence claims against both TCI and Canales.

The jury returned a verdict finding Ramirez, Canales, and TCI all negligent. In regard to TCI, the jury found TCI negligent in its supervision of Canales but not negligent in its training of Canales. Assigning proportionate responsibility, the jury found Ramirez was 20% responsible, TCI was 57% responsible, and Canales was 23% responsible. In awarding damages, the jury awarded Ramirez $250,000 for physical pain sustained in the past, $50,000 for physical pain in the future, $200,000 for mental anguish sustained in the past, $200,000 for mental anguish in the future, $65,000 for disfigurement sustained in the past, $50,000 for physical impairment sustained in the past, $200,000 for physical impairment in the future, $46,000 for reasonable expenses of necessary medical care in the past, and $150,000 for reasonable expenses of necessary medical care in the future. The trial court rendered a final judgment ordering, adjudging, and decreeing that Ramirez

3

recover a total amount of $777,830.26 from TCI, and $313,863.333 from Canales, after including pre-judgment interests and costs.

TCI and Canales filed a motion to disregard the jury's findings and for judgment notwithstanding the verdict and a motion for new trial, which the trial court denied. This appeal followed.

TCI and Canales present six issues on appeal spanning complaints about trial court rulings impacting the claims brought against both parties.

## II. NEGLIGENT SUPERVISION

In its first two issues, TCI argues the trial court erred in allowing Ramirez to submit a non-viable, direct liability claim against it for negligent supervision. Because TCI conceded that Canales had been acting in the course and scope of his employment at the time of the collision, it contends Ramirez was barred from proceeding on a direct liability claim. TCI's first issue maintains that the negligent supervision claim should have been excluded as a matter of law and not submitted to the jury. Relatedly, in its second issue, TCI contends the evidence presented at trial was legally and factually insufficient to support the jury's finding that TCI's negligent supervision was a proximate cause of the collision. TCI urges that undisputed evidence—including an admission from Ramirez's own expert—established that Canales was a qualified and experienced driver who received more than adequate training on commercial driving before he embarked on his route. In short, TCI maintains that the negligent supervision claim is invalid under the circumstances of the case; and, in any event, it was unsupported by legally sufficient evidence. To address these two issues, we will assume without deciding that Ramirez's negligent supervision claim was viable and proceed to evaluate the legal sufficiency of the evidence in support of the claim.

4

### A. Standard of review

A legal sufficiency or "no evidence" challenge will only be sustained on appeal if the record demonstrates: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *see also Rayner v. Claxton*, 659 S.W.3d 223, 238 (Tex. App.—El Paso 2022, no pet.). When conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not. *City of Keller*, 168 S.W.3d at 810. "[A]n appellate court conducting a legal sufficiency review cannot 'disregard undisputed evidence that allows of only one logical inference.'" *Id.* at 814. The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827.

When reviewing factual sufficiency of evidence, we examine all the evidence and set aside a finding only if the evidence supporting the jury finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Under both legal and factual sufficiency review, we are mindful that the jury, as factfinder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819. We may not substitute our judgment for the factfinder's, even if we would reach a different answer on the evidence. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). However, "proper review [by an appellate court] also prevents jurors from substituting their opinions for undisputed truth. When evidence contrary to a verdict is conclusive, it cannot be disregarded." *City of Keller*, 168 S.W.3d at 817.

### B. Applicable law

A claim of negligent hiring, training, or supervising requires the plaintiff to prove the employer owed the plaintiff a legal duty to hire, supervise, and train competent employees, which the employer breached, and the breach proximately caused injury to the plaintiff. *See Rayner v. Claxton*, 659 S.W.3d 223, 248 (Tex. App.—El Paso 2022, no pet.) (citing *Bedford v. Moore*, 166 S.W.3d 454, 463–64 (Tex. App.—Fort Worth 2005, no pet.)). Generally, there is no duty to protect another from the conduct of a third person. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). But an exception exists when there is a special relationship. *Id.* "Under this exception, the theory of negligent hiring and supervision imposes a general duty on an employer to adequately hire, train, and supervise employees." *Houser v. Smith*, 968 S.W.2d 542, 544 (Tex. App.—Austin 1998, no pet.). Notably, however, "the theory of negligent hiring and supervision does require that plaintiff's harm be the result of the employment." *Id.*

As relevant here, to prevail on his claim of negligent supervision, Ramirez needed to prove: (1) TCI owed him a legal duty to supervise its driver employees; (2) TCI breached that duty; and (3) that breach proximately caused his injuries. *See Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005, no pet.). As for proximate cause, it requires proof of cause-in-fact and foreseeability. *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). To meet that element, Ramirez needed to show that TCI's actions in supervising Canales were the cause-in-fact of his injuries and his injuries were a foreseeable consequence of TCI's breach of its duty to supervise Canales. *See Knight*, 167 S.W.3d at 584.

### C. Analysis

Ramirez's sole theory in support of negligent supervision contended there were two available routes to exit the Amazon facility—one safer than the other—and TCI negligently

supervised its drivers because Canales was driving on the less-safe route moments prior to the collision. Ramirez argued that TCI had made "unprotected left-hand turn[s] . . . an unnecessary part of Canales's route." Ramirez's expert, Roger Allen, testified that TCI has "one of the best training programs [he had] ever seen in the market" and that Canales received training from TCI. But, Allen described that Canales was not properly supervised consistent with TCI's policy because, he claimed, "if they used their own training program, this crash . . . should have been prevented." He pointed out that the training program warned about the danger of unprotected left-hand turns. He noted that, if TCI had "scouted" the safer route, Canales would not have made the dangerous turn leading to the collision with Ramirez. Allen thus opined that TCI "failed to properly train and supervise their drivers."

TCI countered with evidence establishing that Canales held both Class A and Class B driver's licenses, had prior experience as a truck driver, and that TCI considered him a "target zero" because he had no prior crashes or investigations as a truck driver. TCI also presented evidence, as Ramirez's expert acknowledged, that it had one of the "best" training programs in the market. Also, Canales received training when he was hired and that TCI required weekly, monthly, and quarterly training sessions. TCI also prohibited drivers from holding cell phones in their hands when driving. As to the routes driven, TCI presented evidence that, even though TCI sometimes selected routes for its drivers, drivers still remained free to deviate from chosen routes. Canales testified he "always" used the Verde Parkway to Schertz Parkway route as he drove to and from the Amazon facility. He testified he had never before had any issues taking that route and making a left-hand turn from Verde Parkway to Schertz Parkway.

Relying on this Court's decision in *Rayner v. Claxton*, TCI asserts the evidence presented at trial was legally and factually insufficient to support the jury's finding that it negligently

7

supervised Canales on the occasion in question. 659 S.W.3d at 223. In *Rayner*, a motorist sued a truck driver and the truck driver's employer for injuries he sustained when part of the truck's load fell on his windshield when the over-height load struck the underside of a highway overpass. *Rayner*, 659 S.W.3d at 231. The motorist asserted claims against the truck driver's employer for negligent entrustment and negligent hiring, training, and supervision. *Id.* at 248. The truck driver and his employer appealed the jury's verdict in favor of the motorist and, among other things, challenged the sufficiency of the evidence to support the negligent entrustment and negligent hiring, training, and supervision claims. *Id.* at 236–38. In support of the jury's finding, the motorist pointed to the following evidence: the employer hired a safety manager even though he was "not in the business of teaching or instructing" drivers; the employer offered "no training or anything[,]" including safety training, to its drivers; there was testimony from the owner of the employer that she "knew prior to the crash . . . that operating a trucking company unsafely would unreasonably put the motoring public at significant risk of death or serious bodily injury," that the employer was required to follow regulations to ensure "safety on the roads and highways for every one of us," and that distracted driving is a known danger to travelers on the roadway; the employer did not have any of its own written manuals or formal safety training process other than telling its drivers to be careful; and the employer did not have any "policies whatsoever related to the drivers['] use of cell phones in their 18-wheeler trucks[.]" *Id.* at 249.

Despite such record, this Court concluded there was no evidence that the truck driver "was an unskilled, untrained, or otherwise unqualified driver." *Id.* at 250. Relevant to the time of the incident, there was no evidence submitted showing the truck driver violated the company's policy to not use cell phones that required more than one touch to answer or to make phone calls while driving. *Id.* Accordingly, we concluded there was no more than a mere scintilla of evidence

8

indicating the truck driver was an untrained or otherwise incompetent driver. *Id.* at 250. Additionally, there was no more than a scintilla of evidence that the employer "knew, or through reasonable inquiry should have known, [the driver] was incompetent or otherwise unfit to operate the vehicle or complete his work . . . as a commercial truck driver." *Id.*

Contrasted with this absence of evidence, the record also included other evidence establishing the incident was caused by the truck driver proceeding "off route." *Id.* at 251. The driver testified he was also aware he needed to pull over or turn around once he realized he had gone off route. *Id.* We concluded the truck driver's failure to pull over or turn around did not indicate he was ignorant of the rules requiring him to do so. *Id.* More importantly, the employer was not aware the driver had traveled off route until after the incident occurred. *Id.* We stated "[t]here was no additional instruction [the company] could have provided to [the driver], reminding him of the need to pull over or turn around after he strayed off course—which he consistently testified he was trying to do—because [the company] was never afforded an opportunity to do so." *Id.*

As in *Rayner*, we conclude the record here contains no evidence that TCI either knew, or should have known, that Canales was an incompetent driver and yet they still employed him. *Rayner*, 659 S.W.3d at 251. As to the route selection theory, TCI maintains "there is no authority imposing a duty on a trucking company to select the 'safest' route for its drivers—rather, under federal law, the duty of safe operation falls squarely on commercial drivers." Ramirez points to no authority per se that requires an employer to supervise an employee's route choice. Instead, Ramirez argues that TCI ignored its duty to use reasonable care when undertaking to provide transportation services to another. Citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000), Ramirez contends "TCI undertook a duty in the supervision of its employees to

9

choose the safest route available for them. . . . [and] Canales, who [was] owed a nondelegable duty by [TCI] to maintain a safe workplace, . . . was entitled to rely on TCI's reasonable execution of this duty." On review, however, we conclude that Ramirez's reliance on *Torrington* is misplaced. *Torrington* involved a different type of negligence claim—negligent undertaking—which focuses on different elements than negligent supervision, and Ramirez does not argue that such claim was at issue in this case. *Id.* at 837.

Even when we credit evidence suggesting that an alternative route may have been safer due to the absence of an unprotected left-hand turn, Ramirez still failed to establish that Canales was an unfit or incompetent driver or that TCI negligently supervised him at the time he executed his turn while driving on his chosen route. *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 412 (Tex. 2009) ("[T]he employer 'owes no duty to warn of hazards that are commonly known or already appreciated by the employee.'").

For all these reasons, we conclude there was legally insufficient evidence to support the jury's finding of negligent supervision because there was no evidence that Canales was an unskilled, untrained, or otherwise unqualified driver, or that TCI otherwise breached its duty to supervise him on the occasion. *See Rayner*, 659 S.W.3d at 248. Because direct negligence claims against an employer require a plaintiff to establish a negligent act or omission on the employer's part, and we have concluded there is no evidence of a negligent act or omission by TCI, we agree that the direct negligence claim should not have been submitted to the jury.

After assuming without deciding that Ramirez's negligent supervision claim was viable, we sustain TCI's second issue.

10

## III.  DISPOSITION

In their remaining issues,[2] TCI and Canales do not challenge the sufficiency of the evidence to support the other portions of the jury's verdict, i.e., Canales's negligence. Rather, they assert evidentiary reasons on which a new trial should be granted. Because of our resolution of TCI's second issue, we conclude the jury could have apportioned liability differently had TCI not been erroneously included in the apportionment question.

A single apportionment question was submitted to the jury. The charge instructed the jury in Question No. 4:

> For each person you found caused or contributed to cause the occurrence, find the percentage of responsibility attributable to each:
>
> a.  Brian Ramirez                        20%
>
> b.  Transportation Concepts, Inc.        57%
>
> c.  Eloy Canales                         23%
>
>     TOTAL                                100%

The apportionment question asked the jury to segregate liability amongst three separate parties based on separate theories of liability: Ramirez, TCI, and Canales. By sustaining TCI's second issue, we have concluded that no evidentiary basis warranted the imposition of direct liability against TCI, a party the jury found 57% responsible for the collision based on negligent supervision.

---

[2] In Appellants' third through sixth issues, they argue: the trial court erred in admitting testimony from Ramirez's expert regarding its purported negligence and gross negligence; the trial court erred in excluding evidence that Ramirez did not have a driver's license; Ramirez's closing argument to the jury contending it should award both past and future noneconomic damages based on a per diem unit of time was reversible error; and that they established entitlement to a new trial because of the cumulative effects of numerous errors.

11

Because we have concluded the direct negligence claim lacked legally sufficient evidence, the verdict could have only been based on one valid theory of liability, the general negligence of Canales. Because the jury foreseeably could have apportioned liability differently had TCI not been included in the charge, a new trial is warranted. *See Diamond Offshore Drilling, Inc. v. Black*, 652 S.W.3d 463, 482 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (citing *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 230–31 (Tex. 2005)).

## IV.  CONCLUSION

We conclude there was insufficient evidence to support the jury's verdict that TCI negligently supervised Canales. We therefore reverse the judgment against TCI and render judgment in its favor. Because the jury apportioned liability among TCI and Canales, we cannot be reasonably certain that the inclusion of TCI in the charge did not affect the jury's findings as to the apportionment of liability. We therefore remand the case for a new trial as to Canales.

GINA M. PALAFOX, Justice

June 24, 2025

Before Salas Mendoza, C.J., Palafox, J., and Rodriguez, C.J. (Ret)
Rodriguez, C.J. (Ret.) (Sitting by Assignment)

12