

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-24-00056-CV

_____

WOLFCREEK MINERALS, LLC AND BRETT DUKE, APPELLANTS/CROSS-APPELLEES

V.

WARREN POWER & MACHINERY, L.P. D/B/A WARREN CAT AND IROCK CRUSHERS, LLC, APPELLEES/CROSS-APPELLANTS

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 108316-A-CV, Honorable Dee Johnson, Presiding

August 7, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

We deny Irock's motion for rehearing, withdraw our opinion issued on July 16, 2025, and substitute the following opinion of the Court.

This appeal arises from complex commercial litigation involving a failed rock crusher lease-purchase arrangement. Wolfcreek Minerals, LLC and its sole member Brett Duke sued Warren Power & Machinery, L.P. d/b/a Warren Cat and Irock Crushers,

LLC, alleging violations of the Deceptive Trade Practices Act,[1] fraud, breach of warranty, and negligent misrepresentation. Warren filed a counterclaim seeking the unpaid balance under the parties' lease-purchase agreement.

Following a jury trial, the parties obtained mixed results that led to post-trial motions and this appeal. The jury found that Warren and Irock committed knowing DTPA violations, that Irock committed fraud,[2] and that Warren committed negligent misrepresentation. However, the trial court granted defendants' post-trial motions to disregard the jury's DTPA findings, concluding that Texas's large transaction exemption barred Wolfcreek's DTPA claims as a matter of law. The court rendered judgment awarding Warren $97,216.84, consisting of $41,822.27 on its breach of contract counterclaim and $115,394.57 in attorney's fees, offset by $60,000 for Warren's negligent misrepresentation. All parties appeal various aspects of this judgment.

We affirm the trial court's application of the large transaction exemption to the DTPA, but reverse the attorney's fees award for lack of statutory or contractual authorization and award a take-nothing judgment. We reverse the judgment on negligent misrepresentation and remand it for a new trial. The remainder of the judgment is affirmed.

## BACKGROUND

Wolfcreek operates a rock crushing business serving Texas customers. In April 2018, Wolfcreek entered into a rental purchase option agreement (RPO) with Warren for

---

[1] Texas Deceptive Trade Practices-Consumer Protection Act, TEX. BUS. & COMM. CODE ANN. §§ 17.41–.63.

[2] A damage question tied to the jury's fraud finding was not submitted.

a TC-15CC rock crusher to serve its customers' needs. The RPO provided that Wolfcreek would rent the crusher for a minimum of three months at $26,900 per four-week period, with an option to purchase the machine for $633,097.85. Brett Duke, Wolfcreek's sole member, executed a personal guaranty for all obligations under the RPO.

The crusher failed to perform as anticipated, requiring Wolfcreek to rent additional equipment and purchase crushed rock from competitors to meet customer obligations. Wolfcreek alleged that some of these performance problems resulted from Warren's failure to disclose the TC-15CC was a prototype model rather than standard production equipment. Duke also alleged that Warren misrepresented other support equipment would be provided at no additional charge. Duke testified Wolfcreek was forced to bear $50,000 to $52,000 per month in total equipment expenses during the rental period, in addition to the purchased rock.

Despite these problems, the parties addressed the purchase option provision of the RPO in October 2018. Duke signed a conversion document stating Wolfcreek's agreement "to purchase this machine described above at the stated conversion price in accordance with the terms and conditions of the original rental/[RPO] agreement." Wolfcreek received credit toward the purchase price for lease payments made during the rental period. Despite signing this document, Wolfcreek ultimately returned the crusher to Warren without completing the purchase.

Wolfcreek and Duke sued Warren and Irock for equipment failures and alleged misrepresentations. Warren raised various affirmative defenses, including the bar of the

3

DTPA's large transaction exemption.[3]  Warren also filed a counterclaim for the unpaid balance under the RPO.

At trial, a jury found Irock committed fraud, Warren and Irock each committed knowing DTPA violations, Warren committed negligent misrepresentation, and Wolfcreek failed to pay all sums due Warren under the RPO.  The jury awarded actual damages of $24,500 each against Warren and Irock, with additional damages for knowing violations of the DTPA in the amount of $110,000 against Warren and $200,000 against Irock.  The amount due Warren from Wolfcreek was stipulated at $41,822.27

Warren and Irock filed post-trial motions asking the trial court to disregard the jury's DTPA findings because the large transaction exemption applied as a matter of law.  The court granted these motions and rendered judgment that Wolfcreek take nothing on its DTPA claims, with judgment for Warren on its counterclaim plus attorney's fees. Wolfcreek filed a motion for new trial, which was overruled by operation of law.  This appeal followed

**ANALYSIS**

**I. WOLFCREEK'S APPEAL**

A.  The DTPA's Large Transaction Exemption

---

[3] *See* TEX. BUS. & COM. CODE ANN. § 17.49(g) ("Nothing in this subchapter shall apply to a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence.").

By its first issue, Wolfcreek argues the trial court erred in disregarding the jury's DTPA verdict because the large transaction exemption[4] does not apply, there was insufficient evidence supporting its application, and defendants waived the defense. We disagree.

A trial court may disregard a jury finding if there is no evidence to support the finding or if the finding is immaterial. TEX. R. CIV. P. 301; *Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex. 1994). A jury question is considered immaterial when it should not have been submitted, it calls for a finding beyond the province of the jury, or it has been rendered immaterial by other findings. *Southeastern Pipe Line Co., Inc. v. Tichacek,* 997 S.W.2d 166, 172 (Tex. 1999).

The DTPA does not apply when a "transaction, a project, or a set of transactions relating to the same project, involve[s] total consideration by the consumer of more than $500,000 . . . ." TEX. BUS. & COM. CODE ANN. § 17.49(g). The statute does not define "total consideration" or "transaction." In the absence of statutory definition, courts give words their ordinary meaning and may consider dictionary definitions, judicial constructions, and other statutory definitions. *Am. Pearl Group, L.L.C. v. Nat'l Payment Sys., L.L.C.*, No. 24-0759, __ S.W.3d __, 2025 Tex. LEXIS 424 at *8–9 (Tex. May 23, 2025); *Colorado Cnty. v. Staff*, 510 S.W.3d 435, 450 (Tex. 2017). A "transaction" under the DTPA contemplates acts whereby an alteration of legal rights occurs. *Doe v. Boys*

---

[4] TEX. BUS. & COM. CODE ANN. § 17.49(g). The 1995 revisions to the DTPA "eliminated many high-dollar transactions from the reach of the DTPA. These changes were part of lawmakers' efforts to maintain the DTPA as a viable source of relief for consumers who encounter and are harmed by unscrupulous business practices, but to remove from the scope of the Act . . . litigation between big businesses." Teel Bivins et al., *The 1995 Revisions to the DTPA: Altering the Landscape,* 27 TEX. TECH LAW REV. 1441, 1447 (1996). Senator Bivins was the senate sponsor of the bill resulting in section 17.49(g). *Id.* at 1441.

5

*Clubs of Greater Dall., Inc.*, 868 S.W.2d 942, 954 (Tex. App.—Amarillo 1994), aff'd, 907 S.W.2d 472 (Tex. 1995). "Total" means comprising or constituting a whole. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1320 (11th ed. 2014). "Consideration" is a present exchange bargained for in return for a promise. *Roark v. Stallworth Oil & Gas*, 813 S.W.2d 492, 496 (Tex. 1991).

Under the RPO, Wolfcreek's transaction was the rental and acquisition of the crusher through an integrated lease-purchase arrangement. The terms and pricing of the RPO were undisputed at trial.[5] If a contract has a certain and definite meaning, the contract is unambiguous, and courts will construe it as a matter of law. *Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 690 (Tex. 2022).[6] The minimum rental payments and purchase option created a unified transaction designed to transfer ownership of the crusher to Wolfcreek. The RPO's rental component provided Wolfcreek the opportunity to assess the machine's performance, while the purchase option guaranteed Wolfcreek's ability to acquire ownership on specified terms.[7] The agreement provided credit toward the purchase price for rental payments, demonstrating the integrated nature of the arrangement. The total consideration Wolfcreek committed

---

[5] That is, rental for at least three months at a four-week rate of $26,900, the option of purchasing the crusher for total price of $633,097.85 plus a 2% increase at any time during the RPO.

[6] We construe contracts as a whole and according to their plain, ordinary, and generally accepted meanings unless the lexical environment demands otherwise. *Cook v. Cimarex Energy Co.*, No. 07-19-00099-CV, 2021 Tex. App. LEXIS 2474, at *7 (Tex. App.—Amarillo Mar. 31, 2021, no pet.) (mem. op.).

[7] An option states terms upon which the seller will sell if the optionee accepts. *Holt v. Pearcy/Christon, Inc.,* 663 S.W.2d 851, 853 (Tex. App.—Dallas, writ ref'd n.r.e.). The option holder purchases the right to compel a sale on the stated terms before expiration. *Comeaux v. Suderman*, 93 S.W.3d 215, 219–20 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

to pay under this integrated arrangement exceeded $500,000, bringing it within the large transaction exemption. TEX. BUS. & COM. CODE ANN. § 17.42(g).

Wolfcreek argues the total consideration determination must exclude the purchase option and focus only on amounts committed at the time the parties entered the RPO. This approach artificially fragments what the parties created: an integrated lease-purchase arrangement. The exemption determination depends on facts existing when the parties entered the agreement, but the analysis should consider the "transaction . . . or *a set of transactions relating to the same project*," rather than treating the rental and purchase components as separate arrangements. *See id.* § 17.49(g) (emphasis added).

Wolfcreek had choices. It could have entered only a lease agreement and received only lease rights. Instead, it chose a purchase option and accepted the specific benefits that option provided: protecting the equipment from sale to others and securing the right to compel a sale on specified terms before expiration. By including the purchase option, Wolfcreek made those terms part of the transaction. Having contracted for the option's benefits, Wolfcreek cannot now disclaim the burdens that flow from that same provision. *See E. Hill Marine, Inc. v. Rinker Boat Co.,* 229 S.W.3d 813, 820–21 (Tex. App.—Fort Worth 2007, pet. denied) (rejecting dealer's argument that boat dealer agreement did not include promise to pay more than $500,000 where dealer "did not apply to sell Rinker boats so that it could simply have that option and never use it; it applied to be a Rinker boat dealer so that it could purchase boats and then sell them in its showroom for profits.").

7

The trial court correctly applied the large transaction exemption to bar Wolfcreek's DTPA claims. The exemption determination turned on undisputed contractual terms, not disputed facts requiring jury resolution. Wolfcreek's arguments about insufficient evidence and waiver therefore fail. We overrule Wolfcreek's challenge.

B. Attorney's Fees

Wolfcreek also challenges the trial court's $115,394.57 attorney's fees award to Warren, arguing it lacked statutory or contractual authorization. Warren responds that the "applicable law" provision for fees under the RPO includes both statutory and common law. It contends Texas law permits fee-recovery provisions that are "looser or stricter" than Chapter 38 of the Texas Civil Practice and Remedies Code allows. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019); *KC Pharmacy, LLC v. JPMorgan Chase Bank, N.A.*, 2021 Tex. App. LEXIS 2183, at *21–22 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (mem. op.).

Texas follows the American Rule, which provides that litigants may recover attorney's fees only if specifically provided for by statute or contract. *See Epps v. Fowler,* 351 S.W.3d 862, 865 (Tex. 2011). We review a party's entitlement to recover attorney's fees de novo as a question of law. *Whittington v. Green*, No. 07-18-00007-CV, 2020 Tex. App. LEXIS 336, at *4 (Tex. App.—Amarillo Jan. 14, 2020, no pet.) (mem. op.).

Although we agree with Warren's general discussion of the law, we disagree that the RPO provided for attorney's fees here. The RPO's "Default and Remedies" section states:

8

In any event of default by Lessee, Lessor shall have all of the rights and remedies provided by applicable law including recovery of attorney's fees and other costs of enforcing the RPO.

When Warren sued Wolfcreek in November 2019, the "applicable law" (section 38.001 of the Texas Civil Practice and Remedies Code) allowed recovery of reasonable attorney's fees from "an individual or corporation." Wolfcreek is a limited liability company. That version of section 38.001 did not authorize attorney's fees recovery against limited liability companies. *Renegade Well Services, LLC v. Amerivax, Inc.*, No. 07-21-00211-CV, 2022 Tex. App. LEXIS 3105, at *7–8 (Tex. App.—Amarillo May 9, 2022, no pet.) (mem. op.).

Warren's cited authorities are inapposite because they involve fundamentally different contractual provisions that created independent obligations to pay fees. In *KC Pharmacy*, the guaranty stated that the guarantor "will also reimburse [Chase] for any fees, charges, costs and expenses, including reasonable and necessary attorneys' fees" that Chase may pay in collecting from defendant. 2021 Tex. App. LEXIS 2183, at *5. In *Rohrmoos*, the lease provided that "the prevailing party shall be entitled to an award for its reasonable attorneys' fees." 578 S.W.3d at 488. The obligation to pay attorney's fees came from the text of the contract, not from an external source of law.

When reviewing agreements providing for possible recovery of attorney's fees, "we do not imply terms but adhere to the parties' intent as expressed in the language of the contract." *Rohrmoos*, 578 S.W.3d at 490. Here, the RPO contains no independent fee-shifting provision like those available in *K.C. Pharmacy* and *Rohrmoos*. Instead, it allows Warren only the "remedies provided by applicable law." This critical distinction means

9

Warren's recovery of fees depends on statutory or common law authority authorizing fees against LLCs—for which no authority existed when Warren filed suit.

We sustain Wolfcreek's second issue and render judgment that Warren take nothing on its claim for attorney's fees. Because this disposition resolves the attorney's fees issue, we need not address Wolfcreek's related sub-issue. *See* TEX. R. APP. P. 47.1.

C. Jury Charge Error; Proper Remedy (Wolfcreek's third issue and Warren's second issue)

Two related challenges converge at Wolfcreek's final issue. Wolfcreek argues the trial court erred by including it in a proportionate responsibility question without a sufficient basis for that submission. Warren challenges the trial court's remedy for that error. Because the error and its remedy are intertwined, we address both together.

The jury charge asked whether Warren committed negligent misrepresentation; the jury said yes. The charge then asked the jury to apportion responsibility between Warren and Wolfcreek for damages caused by negligent misrepresentation. The jury assigned 60% responsibility to Warren and 40% to Wolfcreek. However, the charge skipped a crucial step: it never asked whether Wolfcreek's negligence contributed to its injury in the first place.[8] Proportionate responsibility analysis requires a preliminary finding that the plaintiff was responsible before assigning percentage fault. TEX. R. CIV. P. 277 (requiring inquiry into percentage of responsibility "to each of the persons found to have been culpable"); *Block v. Mora,* 314 S.W.3d 440, 445 (Tex. App.—Amarillo 2009, pet. dism'd) (holding comparative responsibility "necessitates a preliminary finding that

---

[8] The jury awarded negligent misrepresentation damages of $60,000; the judgment awarded Wolfcreek that amount.

10

the plaintiff was in fact contributorily negligent") (citing *Kroger Co. v. Keng*, 23 S.W.3d 347, 351 (Tex. 2000)).  The trial court erred by requiring the jury to assign percentage fault to Wolfcreek without first determining whether it was at fault.

This error creates a remedy problem that affects both parties.  Under Civil Practice and Remedies Code § 33.012(a), the trial court ordinarily must reduce the claimant's recovery by an amount equal to its percentage of responsibility.  But here, the jury awarded $60,000 to Wolfcreek on its negligent misrepresentation claim, and the trial court did not reduce the amount.

If we disregard the percentage of responsibility, as the trial court did, Warren loses any reduction in liability despite the jury's fault finding.  If we impose the 40% responsibility finding, we would modify a judgment in the absence of a finding that Wolfcreek was initially responsible.  In other words, any effort to provide a remedy to the charge error potentially harms one party or the other.

Warren's alternative remedy argument resolves this dilemma.

Even though it initially argues the jury charge was not erroneous, it alternatively contends that if there was charge error, the appropriate remedy was a new trial, not disregarding the jury's findings.  When an improper question is submitted to a jury and error is preserved, the remedy upon a finding of harm is a new trial.  *Borneman v. Steak & Ale of Tex., Inc.*, 22 S.W.3d 411, 413 (Tex. 2000).  "A trial court may disregard a jury finding only if it is unsupported by evidence . . . or if the issue is immaterial."[9]  *USAA Tex.*

---

[9] Neither party argues the finding was immaterial.

11

*Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 505 (Tex. 2018) (quoting *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994)).

The trial court erred when it disregarded the jury's comparative fault finding. The trial court presumably did so in an attempt to remedy the erroneous submission of the jury charge. But as explained above, that remedy carried consequences for Warren. While the parties disagree about whether the charge was erroneous, they agree that a new trial is the proper remedy in light of our finding of error.

We sustain Wolfcreek's third issue and Warren's second issue.

## II. WARREN'S REMAINING ISSUE

In its other issue on appeal, Warren raises a conditional issue that applies only if we reverse the trial court's take-nothing judgment on the DTPA large transaction exemption. Because we affirm the trial court's judgment on that issue, we overrule Warren's issue.

## III. DUKE'S APPEAL

Duke argues the trial court erred in granting Warren's motion for directed verdict against his individual DTPA and fraud claims. The trial court agreed with Warren that Duke lacked "standing" to assert such claims.

A directed verdict is warranted when the evidence is such that no other verdict can be reached, and the moving party is entitled to judgment as a matter of law. *Allred v. Freestone Cty. Fair Ass'n,* No. 07-20-00168-CV, 2022 Tex. App. LEXIS 2513, at *20 (Tex. App.—Amarillo Apr. 18, 2022, no pet.) (mem. op.). We review directed verdicts using the

12

same standard as legal sufficiency challenges, examining the evidence in the light most favorable to the party against whom the verdict was directed and disregarding all contrary evidence and inferences. *City of Keller v. Wilson,* 168 S.W.3d at 823, 827–28 (Tex. 2005). If conflicting evidence of probative value raises a material fact issue on any theory of recovery, the determination is for the jury. *Allred,* 2022 Tex. App. LEXIS 2513, at *21.

Despite the parties' and trial court's reference to the term "standing," we do not construe the arguments as jurisdictional challenges, but rather as questions of whether Duke is entitled to prevail on the merits. *See Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 778 (Tex. 2020)*; State v. Riemer*, No. 07-24-00302-CV, __ S.W.3d __, 2025 Tex. LEXIS 4406 *5–6 (Tex. App.—Amarillo June 25, 2025, no pet. h.).

Regarding Duke's DTPA claim, we held above that the large transaction exemption bars Wolfcreek's DTPA claim as a matter of law. Duke is not entitled to prevail on a DTPA claim for the same reason.

Duke's fraud[10] claim also fails for the reasons stated below. Duke testified he would not have signed the personal guaranty if he had known the crusher was a prototype. Duke's claim of injury is limited to any related to the guaranty; other injuries belonged to Wolfcreek. *See Swank v. Cunningham*, 258 S.W.3d 647, 661 (Tex. App.— Eastland 2008, pet. denied).

---

[10] The elements of fraudulent inducement are: "(1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on, and (5) which caused injury." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018).

13

A plaintiff suing for fraud may recover economic damages, mental anguish damages, and exemplary damages. *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 310 (Tex. 2006). But recovery of mental anguish damages depends on proof that the fraud proximately caused the harm. *Blackwell v. Wise*, No. 11-99-00224-CV, 2000 WL 34235121, at *2 (Tex. App.—Eastland July 20, 2000, no pet.) (per curiam). Proximate cause requires both foreseeability and cause in fact—meaning the defendant's conduct must be a substantial factor in producing an injury that otherwise would not have occurred. *See Werner Enterprises, Inc. v. Blake*, No. 23-0493, 2025 Tex. LEXIS 585, at *13 (Tex. June 27, 2025); *Potter v. HP Tex. 1 LLC*, No. 05-18-01513-CV, 2020 Tex. App. LEXIS 2860, at *18–19 (Tex. App.—Dallas Apr. 6, 2020, no pet.). The plaintiff cannot rely on "meager circumstantial evidence which could give rise to any number of inferences, none more probable than another." *Hancock v. Variyam*, 400 S.W.3d 59, 70–71 (Tex. 2013).

Although some evidence showed Duke suffered mental anguish, including inpatient treatment related to financial strain, no evidence connects this harm to signing the guaranty agreement. *Hancock*, 400 S.W.3d at 70–71. Similarly, no evidence shows Duke personally suffered economic injury from signing the guaranty.

The evidence demonstrates that Duke's damages resulted from Wolfcreek's business problems rather than from any fraudulent inducement related to the personal guaranty. Because the trial court's directed verdict was proper, Duke's issue on appeal is overruled.

## IV. IROCK'S APPEAL

Irock raises a conditional issue that applies only if we reverse the trial court's take-nothing judgment on the DTPA large transaction exemption. Because we affirm the trial court's judgment on that issue, we overrule Irock's issue as moot.

### CONCLUSION

We reverse the portion of the judgment awarding attorney's fees to Warren and render judgment that Warren take nothing by its claim for attorney's fees. We reverse the portion of the judgment pertaining to Wolfcreek's claim for negligent misrepresentation against Warren and remand that claim for a new trial.[11] We overrule the parties' remaining issues and affirm the remainder of the judgment. *See* TEX. R. APP. P. 43.2(c),(b).

Lawrence M. Doss
Justice

---

[11] Because Wolfcreek did not challenge the jury's finding that Irock was not liable for negligent misrepresentation, only Wolfcreek's claim against Warren is now viable.

15